## Trimble *vs* Ratcliff.

ERROR TO THE PIKE CIRCUIT.

*Fraudulent Conveyance, Voluntary Conveyance,*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

*September* 20.

In 1830, Silas Ratcliff, with one Beavers executed an Injunction bond under the penalty of $3,000, for enjoining a judgment in ejectment, and John Graham was the surety of Ratcliff in the bond. In 1834 Silas Ratcliff was surety for one Mins, executed an injunction bond under the penalty of $600, for enjoining a judgment for money. In April 1835, while these injunctions were pending, and when steps were in progress for a dissolution, Silas Ratcliff being also otherwise indebted conveyed to his son Richard, then just of age, 100 acres of land, the tract on which the grantor with his family (*viz* his wife two daughters, and his son the grantee) resided, and continued to reside except for a short time, when they were removed from the possession and kept out of it by an adverse claimant, under color of a recovery which did not embrace this land. The deed recites as the consideration $300 and love and affection and was recorded a few days after its date. The land was worth at least $2,000 and probably more. It has been claimed by the grantee ever since the execution of the deed. He has given it in for taxation as his property, and has been the active manager in cultivating it, and disposing of the issues. But witnesses say, there has been no visible change in the possession, and the grantor and his family have lived upon it as before. In 1838, the injunction in which Graham was surety was dissolved, and in 1840, a judgment on the bond was rendered against his executors for about $1,300. On payment of which the executors sued Silas Ratcliff in May 1841, and on Nov. 25th 1842, obtained a judgment for about $1,500, which was reduced, by a credit growing out of some previous transaction, to between

$1,300 and $1,400. On this judgment two successive executions having been returned "no property" a third one was on the 4th of November 1843, levied on the 100 acres of land conveyed to Richard Ratcliff, and on the 5th of December 1843, Edwin Trimble became the purchaser under the execution, (at the price of about $1,300,) and on the same day received the Sheriff's deed therefor. He immediately commenced this action of ejectment against Richard Ratcliff, Silas Ratcliff and others, and the declaration and notice bearing date the 6th of December 1843, was served on Richard Ratcliff in February 1844.

In the meantime on the 28th day of November 1842, three days after the date of the judgment against him Silas Ratcliff filed his petition in the Federal District Court, for Kentucky, to obtain the benefit of the Bankrupt law, was decreed to be a bankrupt in July 1843, when an assignee was appointed, and obtained his certificate of discharge in March 1844, after the judgment of Grahams executors had been satisfied to the extent of the price bid for the land.

On the trial of the ejectment two principal questions were presented, first, whether the deed to Richard Ratcliff was fraudulent as to creditors, and second what effect should be allowed to the discharge in Bankruptcy. Numerous instructions bearing on these questions were given and refused on each side, and a verdict and judgment having been rendered for the defendants the plaintiff brings the case to this Court. As we do not intend to discuss the evidence, nor even the instructions in detail, we omit many collateral circumstances which bear upon the question of intentional fraud, and merely state, in addition to the outline already given, that the land conveyed to Richard, by the deed in question constituted the bulk of the grantors visible estate, leaving, so far as appears, no other visible means accessible to his creditors except a slave, (who as the family seem to have understood, became in some manner the property of Richard) and some personal estate, which, or the greater part of it was sold in a short time after the date of the deed to satisfy a judgment for $300 under circum-

stances which authorize unfavorable inferences as to the good faith of that proceeding.

But waiving these inferences, and others of a similar character, as not essential to the view we have taken of the case, it appears further, that, by the deed, if effectual and free from any trust, several of the grantor's children were left unprovided for, and himself and immediate family left without a home; and although there is some vague testimony about the grantor's claims, it does not appear that he retained, upon the execution of the deed, sufficient accessible means, if indeed there were any, except the small personal property, for meeting the contingent liabilities above referred to, or even that in which he was the principal debtor. There is no intimation that he met with any misfortune in business, or casual loss of property, or that he was of profligate or extravagant habits, and yet, in about three years, when his injunction was dissolved, the burthen of payment fell upon his surety, and when reimbursement was sought by the surety, Silas Ratcliff, without showing how his property, if any except the small personal estate, had been disposed of, was found to be utterly insolvent, applied for the benefit of the bankrupt law, and in that proceeding, made out an inventory which, after the allowance to himself provided for by law, produced nothing available beyond the costs of the proceeding itself. The conclusion is irresistible that the conveyance was made in utter disregard of existing liabilities, if not purposely with the view of hindering or defeating their enforcement. Then the question is, whether the conveyance made under these circumstances, is not necessarily fraudulent and voidable by his creditors.

If the conveyance had been for a money consideration actually paid, and fairly equivalent to the value of the land, and the grantor had been permitted to remain in possession, or to receive the profits, or a considerable portion of them, though out of possession, this circumstance would be strong, though not conclusive, evidence of a secret trust or fraud, which might render the transaction void as to creditors. The question in such a

*Any disposition of property by a debtor to place it out of the reach of his creditors, but to have the benefit thereof himself, is fraudulent.*

TRIMBLE
vs
RATCLIFF

—So if it, the conveyance, be for natural love and affection, whether the debtor receive a benefit or not, unless ample means be left to satisfy actual contingent creditors.

case would be, whether the transaction was intended by the parties as a disposition of the debtor's property for his benefit, but beyond the control of his creditors, which is the essence of fraud.

If, on the other hand, the conveyance had been made wholly in consideration of love and affection, then, whether the grantor was to derive, or should actually derive, any benefit from it or not, and although the grantee should receive the issues for his own use, still, if the grantor were indebted, or even under pending contingent liabilities at the time, the conveyance, whatever might be the actual intention of the parties as dependent upon proof, would be deemed fraudulent in law, and void as to his creditors, actual and contingent, unless it left ample means for their satisfaction, without presenting any material obstruction or inconvenience, which would not otherwise have existed.

A father may make gift to his child suited to the condition of each, which is not intended, nor upon any reasonable construction can be supposed, to operate to the prejudice of any existing creditors or contemplated liability. But an indebted father has no right to give away his property to the detriment of his creditors, either to equalize his advancements to his children or otherwise except for support and education.

It is indeed a disputed question, whether a conveyance by an indebted father to his child, founded solely on the consideration of love and affection, may not be avoided as fraudulent, *per se*, without reference to the amount of the grantor's indebtedness, as compared with his entire estate, or with the part conveyed. But we do not suppose that the principle which requires every man to be just before he is generous, or that the requisition of good faith towards his creditors, as imposed either by statute or by the principles of justice and morality, is violated by a gift from a father to his child, suitable to the condition of each, which is neither intended, nor upon any reasonable estimate can be expected to operate to the injury or hindrance of any existing creditor, or of any contemplated liability. The indebted father has, however, no right to give away his property to the detriment of his creditors, though it be done for the apparent purpose of equalizing one or more of his children with others, who have been fairly advanced. If he do so, the gift is deemed fraudulent and void as to creditors, without any enquiry as to the actual intent, either of donor or donee. The claim even of a child upon his father, except for suitable present education and support while dependent on him,

cannot come in competition with that of the father's creditors. To prefer his children to the injury of his creditors is, therefore, a fraud upon the creditors; and the donees being mere volunteers, cannot rely upon their own ignorance or innocence in the reception of the gift, but are absolutely implicated in the fraud of the donor, whether it be intentional, or implied by law, from the nature and consequences of his act.

A conveyance founded solely on the consideration of love and affection, is subject to this condemnation, even when the grantor receives no subsequent benefit from the property conveyed; but the fact that he continues to enjoy, or to receive a benefit from the property thus conveyed, tends to show a secret trust, and thus to authorize or confirm the inference of actual or intentional fraud. It may, therefore, make the legal conclusion of fraud more satisfactory, but it is not indispensable to it; and so of other circumstances which have been referred to.

Then we come to the present case, of a conveyance by an indebted father to his son, founded, professedly, upon love and affection, and upon the small additional consideration of $300, which is not more than about one seventh part of the value of the land. And the question is, what effect is this additional and grossly inadequate consideration to have upon the character of the transaction, and upon the attitude and rights of the grantee? Does it change the transaction from a gift to a sale, and make the grantee, instead of being regarded as a volunteer, a purchaser for a valuable consideration entitled to the character and rights of an innocent purchaser? And is he to be protected against the injured creditors of the grantor, unless it be proved as a matter of fact, and to the satisfaction of a jury, that he actually intended or contemplated the injury which, in the condition of the grantor, was the natural and obvious consequence, as it has proved to be the actual effect of the transaction?

If the conveyance had been made to a stranger for the consideration of three hundred dollars, the gross inadequacy of the price, in connection with the condi-

A father conveyed to his son for the consideration of $300 and for natural love &c. as recited in the deed, a tract of land worth $2,000, having several other children unprovided for—having no other home—leaving but little person al property—continued to reside with his son first arrived of age—took the benefit of the bankrupt law.— Held that these facts were sufficient to warrant the conclusion that the conveyance to the son was fraudulent.

tion of the grantor, would have raised a strong presumption of a secret trust and of fraud, without other proof of the grantee's having knowledge of the grantor's condition, or of his fraudulent intent. And the further fact that the grantor was permitted to enjoy the property, or a material benefit from it, after the conveyance, would render this presumption conclusive, and especially if the property conveyed were the only home, and continued to be the principal support of the grantor.

Does the insertion of a nominal money consideration, however inadequate in point of value, make the conveyance to a son more impregnable than if made to a stranger, upon the same money consideration? Does it change his attitude in a contest with his father's creditors, from what it would have been, if the deed had stood upon love and affection alone? Does this small money consideration authorize the son to rest upon his alleged ignorance of his father's intent, or of his condition, or of the necessary effect of the conveyance upon the interest and remedy of his creditors? And must the contesting creditor prove that the consideration was not paid, or that the payment was but colorable, or that the son was not ignorant of any or all of the particulars referred to, or that he actually concurred in the fraudulent intent of the father? An affirmative answer to these questions would, in most instances, furnish a complete protection to colorable transfers from father to son, and enable them, by the mere insertion of a money consideration, to sustain a pure gift to the injury of creditors. We are of opinion that the consideration of $300 in this case, does not change the character of the conveyance, as founded mainly on love and affection, and that the grantee, whether he paid the $300 or not, cannot, under this deed, claim the rights of a purchaser for valuable consideration, unaffected by the proof or presumption of fraud arising from the condition of the grantor, the nature and comparative magnitude of the property conveyed, and the probable and actual injury to creditors arising from the conveyance; and that he cannot require proof that he was cognisant of the in-

tent of the grantor, or of the effect of the deed. But we are further of opinion, that the additional fact that the estate transferred by this deed, almost voluntary in terms, was disproportioned to the circumstances of the father, even without reference to his debts, and embraced his home and farm, without leaving another residence, or means of comfortable support for himself and family, and that in fact they have continued to reside at the same home, and to derive support from the same farm, must be regarded as sufficient to establish in favor of the creditor a secret trust in the original transaction between the grantor and grantee, which is not rebutted by the assumption of ownership and active management by the son, nor by his right or duty to support his parents out of his own property. The question is, whether, as between him and the creditor, the property conveyed to the son upon inadequate consideration, and to the injury of the creditor, is not to be regarded as remaining in the father; and if the other circumstances referred to did not, as we think they do, conclusively establish the affirmative, the additional fact that the father continued to derive a material benefit from the estate conveyed, would supply the deficiency.

The opinions of the Court in giving and refusing instructions on behalf of the plaintiff, in reference to the question of fraud in the conveyance, are not so favorable to him as the principles of this opinion would authorize, and we only remark that most of those which were refused, were but repetitions of others which had been substantially granted.

The instructions numbered 1, 2, 3, 6, 10 and 11, given for the defendants, were either abstract and misleading, or absolutely inconsistent with this opinion. And the instructions denominated in the bill of exceptions, "defendant's qualifications," are of the same character. Other instructions asked for by the defendants were properly refused. With respect to the effect of the proceedings in bankruptcy, and the discharge of Silas Ratcliff, we are of opinion that if, in the transfer to his son Richard, he received any future benefit or interest in the property transferred, such interest should have

been surrendered to the assignee, and the concealment and withholding of it might render the discharge ineffectual. But we are of opinion further, that the discharge, even if valid, is entitled to no effect in this case, except as it may prove, in connection with the proceedings in bankruptcy and other facts, the desperate condition of Silas Ratcliff. The land conveyed to Richard Ratcliff did not pass to the assignee of Silas, whether the deed was fraudulent or not. The most that can be said is, that the assignee might have brought the question of fraud into the proceedings, and have subjected the land to the debts. But he did not do it; and the judgment of Graham's executors having been obtained, and the land sold and conveyed under it, before the discharge, neither the judgment nor the sale is affected by it, so far as the judgment was satisfied. If the purchaser holds for the benefit of the assignee, that is a question which cannot be made between the present parties, and we give no opinion on it. We are of opinion, that if the conveyance to Richard Ratcliff was fraudulent, the sheriff's deed to Trimble passed the legal title, which alone is now in question. The instructions as to the effect of the discharge and other proceedings in bankruptcy were, therefore, irrelevant.

Wherefore, the judgment is reversed and the cause remanded for a new trial, in conformity with the principles of this opinion.

*Apperson* for plaintiff; *Hazlerigg & Moore* for defendants.

