## Creel, et al v. Cloyd.
## Creel, et al v. Smith & Flora.

(Decided January 21, 1913.)

### Appeal from Taylor Circuit Court.

1. **Fraudulent Conveyances—Action to Set Aside—Sufficiency of Evidence.**—In an action to set aside a conveyance from a father to his two sons on the ground that it was without consideration, and for the fraudulent purpose of defeating the plaintiffs in the collection

of their debts, evidence examined and held sufficient to establish that the conveyance was for a fraudulent purpose and without consideration.

2. Fraudulent Conveyances—Knowledge and Intent of Grantee—Effect of Good Faith of Grantee.—Although grantee, in a conveyance to him by his indebted father, did not in the reception of the gift intend to perpetrate a fraud upon the latter's creditors, if his acts had that effect, they would amount to a fraud and would authorize the cancellation of the conveyance.

C. W. WRIGHT, POLSGROVE & GAINES, for appellants.

B. A. RICE, H. S. ROBINSON, H. N. BEAUCHAMP and B. T. HARDIN, for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Suits were instituted in the Taylor circuit court against James E. Creel and his two sons, by John W. Cloyd and Smith & Flora, creditors of James E. Creel, in which they sought to have a conveyance, by said Creel to his two sons, set aside, on the ground that it was without consideration and for the fraudulent purpose of defeating them in the collection of their debts. The defendant, James E. Creel, admitted the indebtedness, but denied that the conveyance was made for a fraudulent purpose; and pleaded affirmatively that it was for a valuable cash consideration. His two sons likewise denied the allegation of fraud as to them, and pleaded that the conveyance was for a valuable consideration. Proof was taken, and, upon consideration, the chancellor adjudged the conveyance fraudulent and directed the deed canceled and the land subjected to the payment of plaintiff's debts. The defendants appeal.

The evidence shows that, for some years before the date of the conveyance, James E. Creel had, in connection with Cloyd and another person, been engaged as partners in the livestock business in Taylor county. They had bought and sold much livestock, the transactions being conducted through a bank at Campbellsville. The business had not proven profitable and they had lost considerable money. In the settlement and adjustment of their business with the bank, Cloyd had to pay several hundred dollars for his associates in business; and it was Creel's part of this partnership indebtedness, which he had to pay to the bank for him, that he was seeking to recover in this suit. Creel was likewise indebted to Smith & Flora and they had instituted suit against him,

in which they sought to recover judgment for the amount due them. Summons was served on James E. Creel, in the suit of Smith & Flora against him, on August 20, 1907. The deed to his two sons, which is attacked as fraudulent, was made on August 24, 1907, or four days after the service of summons upon him in the suit of Smith & Flora. Cloyd had not at that time sued him, but his suit followed shortly after the execution of this deed.

While the deed recites that it was for a cash consideration, the evidence discloses that nothing was paid for the land at that time. Appellant, James E. Creel, testifies that he was indebted to his sons in the sum of $1,000, and that the deed was made for the purpose of satisfying this indebtedness. The explanation offered by appellants of the way and manner in which this indebtedness, on the part of the father to his sons, arose is: James E. Creel received as much as $1,000, for his boys from their grandfather, or his estate; that the money was paid over to him by John L. Collins for them; and that he agreed to account to them for it. This money, he says, was paid to him many years ago, he thinks in 1887. His brother-in-law, John L. Collins, acting for his father-in-law, his children's grandfather, paid him the money. His wife died in 1887, some six or eight months after her father died; that this money, which he received, was his wife's part of her father's estate; that John L. Collins was his father's administrator; and that the money that his wife received from her father was the money that paid for the land. He makes certain other statements, which are not altogether clear, but, from the foregoing, it is apparent: first, that he never received any money whatever from his father-in-law for his children, but that any money that came to him from either his father-in-law or the estate of his father-in-law, was received by him in the life time of his wife; and, if it was not by him, at that time, reduced to possession upon the death of his wife, in September following, he was entitled to all of it; for, chapter 31, section 11, sub-section 3, of the General Statutes, then in force, gave to the husband the entire personal estate of his wife. If he received any money for his children from their grandfather, or his estate, it must have been received after their mother's death; and, if received at all, was evidently received after the death of his father-

in-law and not before, for the record shows that his father-in-law's condition of health and mind was such that his affairs were conducted and managed by a committee, and this committee would have been without power to give to appellant's sons, or to appellant for his sons, any portion of his ward's estate. Indeed, upon a consideration of the entire case, it is apparent that any money that came to appellant, James E. Creel, from the estate of his father-in-law, belonged to him as heir at-law of his wife and that his children had no interest therein. But, from appellant's testimony, we are unable to trace the payment of any such sums, although there is a record of a settlement in the county court of Taylor county by J. E. Creel, guardian, of date May 6, 1891, in which he shows a balance in his hands, as guardian for his five children, amounting to $604.85, the bulk of which, according to said report, was received from H. H. Collins, special commissioner of the Taylor circuit court, and from a sale of stock of the Marion National Bank of Lebanon. Neither vendor nor vendees, however, claim that this is the money which furnished the consideration for this conveyance. Inasmuch as his children had grown to manhood and gone to make their fortunes in the far west, it would be presumed that this indebtedness to them on the part of their father, had long since been settled. But even if it was not, and was still an existing indebtedness, it would not amount to anything like the alleged consideration for this land, for he had five children, and each would have been, at most, entitled to something like $120.00, and the two sons, therefore, would have been entitled to $240.00, with interest; whereas, he insists that he owed them $1,000 upon another account, and nothing upon this. Nor do they claim any indebtedness due them on this account; but, like their father, rest their right upon a claim for $1,000, for money received from their grandfather or his estate. It may be that James E. Creel owed his sons the $1,000 that he claims he did, but, if he did, it is unfortunate that he did not make an effort to pay them until his creditors were attempting to enforce the payment of their debts. His conduct was not such as stamps the transaction as genuine; but, on the other hand, it has every appearance of a fraudulent effort on his part to defeat his creditors in the collection of their debts.

It is argued for his sons that, even though James E. Creel made this conveyance for a fraudulent purpose, nevertheless they cannot be deprived of the land because they knew nothing of such fraudulent intent on his part. Such an argument might be made with some degree of plausibility, had they paid a cash consideration for the land, but they paid nothing. Although, in their answer, they allege that they paid $1,000, from the testimony of their father, if any money was ever paid for them, it was paid prior to the death of their mother in 1887, or twenty years before the execution of the deed, and was received by their father, not for them or their account, but as their mother's interest, either in whole or in part, in her father's estate; and, being such, cannot be claimed by them.

Their father's effort to invest them with title to this property in order to compensate them for the money which he received from their grandfather's estate, if free from even the suspicion of fraud, would be merely a gift on his part and not the satisfaction of any legal obligation to them, and, when viewed in this light, the transaction cannot be upheld, nor can they insist that it should be. A debtor must be just before he is generous, and a conveyance under such circumstances is fraudulent in fact, whether so intended or not. It might, for the purpose of this case, be conceded that neither James E. Creel nor his two sons intended to perpetrate a fraud upon his creditors, but nevertheless, if their acts had this effect, they would in fact amount to a fraud, and being such, the conveyance should be cancelled.

A similar question arose in Trimble v. Ratcliff, 9 B. M., 511, and, in holding that the conveyance should be set aside as amounting to a legal fraud, the court said:

"It is a disputed question, whether a conveyance by an indebted father to his child, founded solely on the consideration of love and affection, may not be avoided as fraudulent, per se, without reference to the amount of the grantor's indebtedness, as compared with the entire estate, or with the part conveyed. But we do not suppose that the principle which requires every man to be just before he is generous, or that the requisition of good faith towards his creditors, as imposed either by statute or by the principles of justice and morality, is violated by a gift from a father to his child, suitable

tc the condition of each, which is neither intended, nor upon any reasonable estimate can be expected to operate tc the injury or hindrance of any existing creditor, or of any contemplated liability. The indebted father has, however, no right to give away his property to the detriment of his creditors, though it be done for the apparent purpose of equalizing one or more of his children with others, who have been fairly advanced. If he do so, the gift is deemed fraudulent and void as to creditors, without any inquiry as to the actual intent, either of donor or donee. The claim even of a child upon his father, except for suitable present education and support while dependent upon him, cannot come in competition with that of the father's creditors. To prefer his children to the injury of his creditors, is, therefore, a fraud upon the creditors; and the donees, being mere volunteers, cannot rely upon their own ignorance or innocence in the reception of the gift, but are absolutely implicated in the fraud of the donor, whether it be intentional, or implied by law, from the nature and consequences of his act.''

In that case, $300.00 had, in fact, been paid in cash; whereas, here nothing was paid, but the consideration was rested upon what amounted, at most, to a moral obligation on the part of James E. Creel to pay to his children, money which he received from their mother which he was under no legal obligation to pay.

Judgment affirmed.