## Sweeney, et al. v. Farmers' State Bank of Greenville.

(Decided April 19, 1927.)

### Appeal from Muhlenberg Circuit Court.

1. Fraudulent Conveyances.—Gift of property by father to son is deemed to be fraudulent and void as to father's creditors who suffer detriment thereby.

2. Fraudulent Conveyances.—Where badges of fraud attend upon conveyance which is attacked as fraudulent, grantee has burden of evidence and must show the bona fides of the transaction.

3. Fraudulent Conveyances.—The fact that the consideration for a deed is inadequate will always be regarded as a badge of fraud.

4. Fraudulent Conveyances.—The fact that the alleged fraudulent deed was not recorded will be regarded as a badge of fraud.

5. Fraudulent Conveyances.—Where the purported consideration for a deed from father to son of restaurant and other property worth from $4,000.00 to $5,000.00 was only $500.00, and the deed was not recorded and son continued to operate the restaurant for the father as he had before and knew his father's condition and intent to only apparently vest title in son, held that trial court properly

set aside the deed as a fraud on father's creditors, under Ky. Stats., section 1906.

6. Fraudulent Conveyances.—In action to set aside deed given by heavily indebted father to his crippled son, wherein the deed was properly set aside as a fraud on creditors, trial court properly denied son judgment for the purported consideration paid by him for the property.

7. Fraudulent Conveyances.—In action to set aside deed to homestead and other property given by heavily indebted father to his crippled son, wherein the deed was properly set aside as a fraud on creditors, the trial court properly adjudged the son entitled to the father's homestead of $1,000.00.

BELCHER & BELCHER for appellants.

EAVES & SANDIDGE, E A. TAYLOR and T. O. JONES for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

On March 4, 1924, T. M. Sweeney executed a deed to his son for a lot in Greenville, Ky., for this consideration, as recited therein:

"The consideration of the love he has for his son and the further sum of one dollar and other valuable consideration in hand paid."

The deed was not lodged for record until September 2, 1925, and on November 12, 1925, this action was brought by two of his creditors, whose debts were created before the deed was made, to set aside the deed as fraudulent under section 1906, Kentucky Statutes, which provides that every conveyance made with the intent to delay, hinder or defraud creditors or other persons shall be void against such creditors or other persons. The allegations of the petition were controverted by the defendants, proof was taken, and on final hearing the circuit court entered judgment in favor of the plaintiffs. The defendants appeal.

T. M. Sweeney, Sr., was a widower. He had three children, the oldest of whom was T. M. Sweeney, Jr. In 1922 T. M. Sweeney, Jr., received an injury on the railroad track by reason of which he lost his right leg and a part of his left foot was cut off. The railroad company paid him $500. He was living with his father on the lot in question, and his two brothers, who were somewhat younger, also lived there. There was on the lot a dwell-

ing house in which the family lived, and an ell had been constructed from the dwelling house to the street, and in this Sweeney, Sr., had for some years conducted a store, selling family groceries. At the other side of the lot he had built a concrete building in which he ran a restaurant, and back of the restaurant was a smaller dwelling. The property, according to the undisputed evidence in the case, was worth between $4,000 and $5,000. After the injury of T. M. Sweeney, Jr., he had remained at his father's home in bed for some time under the care of a nurse, and after he got well enough to work he had taken charge of the restaurant. His father paid him $1 a day for his work and gave him his board. In February, 1924, T. M. Sweeney, Sr., was getting ready to be married again. He paid off all the debts he owed for grocery bills except about $2,000. He then bought new bills about March 1 to fill up the stock so as to make it look good to the new wife. He conceived, as he says, the idea of deeding the property to his son, T. M. Sweeney, Jr., so that she would have no interest in it, and to this end sold the property to his son for $500, which he and his son say was then paid. The father remained in possession of the property and conducted it just as he had before. He was married on March 5, and brought his new wife into the home. When he made the deed to his son he owed the debts due to the plaintiffs, amounting to about $2,400. He testified that his stock of goods in the store was worth $2,000, and that he had uncollected accounts amounting to $2,600, but a part of the stock was old and the accounts were against people who had no property out of which the debts could be paid, although the debtors were miners and usually paid. A strike of the miners occurred in April; he continued to credit his customers as before, and the result was when the strike continued longer than he expected that he became insolvent when the miners could not pay. The deed was not recorded until this condition existed and these actions followed.

It is earnestly insisted that the deed was not made to hinder or defeat creditors and that it was a good-faith transaction for a valuable consideration. The father and the son testify that the son had the $500 in $20 bills and paid the money to him, and they also testify that this was the money he received from the railroad company. But it is apparent from their own testimony that a large part of the money he received from the railroad company had been spent in his sickness, and it does not satisfactorily

appear that he received for his services from his father money that he had saved. It is rather unusual for a person to keep so much money at home for a long time. The father then owed not only the plaintiff's debts, but he was also bound as surety on other obligations, the exact amount of which do not appear, and no doubt he owed for the bills which he had just created to fill up his stock. The land was the only property he had, except the stock of groceries and his uncollected accounts. While it is true that the father might naturally wish to provide for his crippled son it is a fundamental rule that he must be just before he is generous.

In Trimble v. Ratcliff, 9 B. Mon. 511, the court said:

"The indebted father has, however, no right to give away his property to the detriment of his creditors, though it be done for the apparent purpose of equalizing one or more of his children with others, who have been fairly advanced. If he do so, the gift is deemed fraudulent and void as to creditors, without any inquiry as to the actual intent, either of donor or donee. The claim even of a child upon his father, except for suitable present education and support while dependent upon him, cannot come in competition with that of the father's creditors."

This rule was followed in Creel v. Cloyd, 151 Ky. 627, 152 S. W. 776, and a number of subsequent cases. In McDonough v. McGowan, 165 Ky. 425, 177 S. W. 277, the court, referring to many previous cases, said:

"It is the well-settled rule that where badges of fraud attend upon a conveyance which is attacked as fraudulent, their effect is to shift to the grantee the burden of evidence, and he must rebut the inferences thereby created, and sustain the bona fide of the transaction."

The property being of value from $4,000 to $5,000, it is hard to believe that the father and son understood that the father was selling it to the son for $500. The inadequacy of the consideration is always a badge of fraud. The consideration here was so inadequate as to indicate that the real purpose of the father was simply to vest the title apparently in his son. They both continued to live there as before. The son continued to

operate the restaurant for the father as before. The deed was not recorded; this is another badge of fraud. The son well knew the father's condition. He knew all the facts, for they were members of the same family. To permit the son to hold this property and leave his father's creditors unpaid would be to give no proper effect to the statute. There was abundant evidence that the son participated in the intent of his father. The circuit court therefore properly set aside the deed and refused to give judgment in favor of the son for the $500 he alleged he paid, but properly adjudged him entitled to his father's homestead of $1,000. Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050; Martin, etc., v. Maggard, etc., 206 Ky. 558, 267 S. W. 1102.

Judgment affirmed.