CASE 67—EQUITY—NOVEMBER 24, 1883.

## Phillips, &c., v. Shipp, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An action to set aside a conveyance as fraudulent against antecedent creditors, upon the ground that it was voluntary, is barred in ten years after the execution of the deed, regardless of the time when the fraud was discovered.

2. The statute makes no distinction between voluntary conveyances and conveyances actually fraudulent.

3. It must be presumed that the legislature deemed ten years as ample time within which to discover the fraud, and institute all proper remedies for the purpose of obtaining relief.

4. A defense made in good faith to a demand, whatever time may be employed in exerting it, is no "obstruction" in the sense of the statute.

J. & J. CALDWELL AND WINSTON FOR APPELLANTS.
BROWN & DAVIE AND H. POPE FOR APPELLEES.
    No brief.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

The important and controlling question to be determined in this case is whether an action to set aside a deed as fraudulent against antecedent debts, because it was voluntary, can be maintained against the plea of limitation more than ten years after the execution, delivery, and recording of the deed?

Pending a suit begun in 1857, against Thomas L. Phillips, administrator of Samuel Phillips and his sureties, Murray Phillips being one of the sureties, on the 8th day of February, 1861, in consideration of one dollar, and the further consideration of provision for his wife, America Phillips, and her children, conveyed by deed to John A. Shrader in trust for their sole use and benefit, the home farm on which Murray Phillips lived, containing three hundred and sixty-seven acres.

That suit was contested by the administrator and his sure-

ties, and was twice in this court upon appeal, each time be-ing reversed. Final judgment was rendered against Murray Phillips and others, on the 18th day of November, 1876, for sums in favor of the appellees aggregating $10,114.86. No execution was issued until December 12, 1878, when executions emanated and were returned, "No property found." On the 21st day of January, 1879, this action was brought against Murray Phillips, his wife and children, and their trustee, Shrader, who was also defendant to the suit referred to, to vacate the deed of February 8th, 1861, and subject the land described in it to the payment of the foresaid judgment. Waiving the question whether the alle-gations of appellees' petition amount to a charge of actual fraud, and treating it as a suit under the 2d section of arti-cle 1, chapter 44, General Statutes, we will proceed to the consideration of a proper and legal answer to the question of limitation, which must settle the legal rights of the parties.

Section 6 of article 3, chapter 71, General Statutes, pro-vides: "In actions for relief for *fraud or mistake*, or dam-ages for *either*, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract, or the perpetration of the fraud."

Section 2, *Ibid.*, prescribes that "an action for relief, on the ground of fraud or mistake, shall be commenced within five years next after the cause of action accrued."

These sections relate to the same character of fraud and mistake, and must be construed together in ascertaining the time at which the cause of action accrues, and also the length of time which will bar relief in the two specified states of case named in section 6 of the statute.

By section 6, discovery of the fraud or mistake is the fact

which fixes the accrual of the cause of action, and that accrues when the discovery takes place, or should have taken place by the use of ordinary diligence. The time of the accrual of the cause of action being prescribed by that section, without fixing any period within which it should be barred, section 2 was adopted to complete the first clause of section 6, and declared the limitation to be five years after the accrual of the cause of action, or the discovery, which are one and the same thing.

The legislature, knowing that great contentions would arise as to the time of discovery, when limitation should be pleaded, and that old and stale transactions, deemed fraudulent or the result of mistake, might therefore vex the courts long after the facts are presumed to have passed out of memory, or beyond the ability of the parties to establish or explain them, prescribed a period within which discovery *and* the institution of the action should both occur. The language used for this purpose is plain, direct, and forcible. It is this: "But no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

Counsel for appellees affirm that this clause of section 6 refers to actual frauds, and not to that class of frauds commonly denominated constructive or legal frauds. And we are presented with a learned philological discussion of its terms, and an array of authorities to prove their proposition, which are quite persuasive; but in view of the manifest intention of the legislature, the previous adjudications of this court, and the reason for a different construction, we are bound to hold that section 6 applies to actual and constructive frauds both.

In the case of Cotton v. Brown (MS. opinion, March

25, 1882) this court, by Chief Justice Lewis, said: "Al-though conveyances by a debtor, without consideration therefor, are, by the terms of section 2, article 1, chapter 44, General Statutes, declared not fraudulent, but void as to his then existing liabilities, still we are of the opinion *they are, in the meaning of the statute, constructively fraudulent*, and that the statutory bar of five years provided in section 2, article 3, chapter 71, to an action for relief on the ground of fraud, was intended by the legislature to apply to such cases, as well as those of actual fraud." As we have said that the bar of five years provided by section 2, article 3, was evidently adopted to make a complete statute of section 6, it is clear, according to Cotton v. Brown, that the first clause of section 6 refers to both actual and constructive frauds. Not only is the statute (sec. 2, art. 1, chap. 44) susceptible of the construction that it embraces constructive frauds, because the acts described in it are prohibited by the law of that section, but it is based upon the same reason which induced the passage of the statute (13 Elizabeth, chap. 5). The object of that statute was "to protect creditors from *those frauds* which are frequently practiced by debtors under the pretense of making suitable provisions for wives, children, and other relations." (Sec. 353, Story's Eq.) Under the construction given to it by the courts, voluntary conveyances to strangers were held fraudulent, but convey-ances made upon a good or valuable consideration, and in good faith, were protected. The good faith of such con-veyances depended upon the circumstances of the grantor more than anything else. But our statute, above named, went one step further than that of 13 Elizabeth, and declared all conveyances, without *valuable* consideration therefor, .void as to all the debtor's then existing liabilities, thus shut-

ting out the question of good faith in such cases which constitute a fraud in law, or a constructive fraud, which is defined to be such "acts or contracts as, although not originating in actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, are yet by their tendency . . . to *deceive* or mislead other persons, or violate private confidence, deemed equally reprehensible with *positive fraud*, and therefore are prohibited by law." (Story's Eq., sec. 258.)

And we think this class of legal frauds may be multiplied by the legislature to the utmost limit of the mischief where it is the same as result from acts and contracts done *malo animo*. The principle that every man is bound to be just before he is generous, embodied in our law of descent and distribution, is the underlying stone of our statute which places *all* volunteers, be they strangers or kindred, on the same footing with reference to pre-existing debts which must be discharged by the grantee, like an heir, before he is entitled to the estate. The legislature, in passing the law, saw the mischief which grew out of the selection of those whose blood and affection constituted a good consideration, and embraced them as well as mere strangers, and destroyed the temptation to select them as volunteers for a bad or dishonest purpose. It is clear, looking at the reason of the statute and the mischief it was intended to remedy, that it embraces a class of cases which belong strictly to the category of constructive frauds. It follows, therefore, that the limitation provided by section 6 of article 3, chapter 71, General Statutes, applies to this case, and nothing is left us but to enforce the plain provision of the statute, which forbids the bringing of any action for relief for fraud or mistake ten years after the time the mistake shall be made or the fraud perpetrated.

There is much more reason in applying the statute to constructive frauds than to actual frauds, for the former are easier discovered, and are not tainted with the evil which vitiates transactions resulting from the latter. In other words, it is more consonant with honesty to give repose, by statutory limitation, to transactions constructively fraudulent, and deny it to those which are actually fraudulent. And it is not to be presumed, in face of the equitable doctrine that limitation only begins to run in favor of actual fraud from its discovery, but in other cases from the transaction, that the legislature intended to wipe out this discrimination, and, preferring the evil to the unlawful merely, give a remedy, where evil intent and dishonesty prompts the act, for ten years only, yet fix an almost limitless period for legal wrongs not perhaps evil in themselves or the result of design. Mistake, of course, is less reprehensible than actual fraud, and it is clearly within the statute, whose words are general in their nature, and embrace frauds, as we think, of every species. All the discussion found in Jones v. Read (1 Humphrey, Tenn.), Marr v. Rucker (*Ibid.*), Gates v. Andrews, 37 N. Y.), Wilson v. Buchanan (7. Grattan, Va.), and other cases cited by counsel, is based upon wholly different statutes from ours. In the Tennessee cases the limitation, by the statute considered in them, began to run only after the cause of action accrued. And so with every statute and case examined by us. None of them deny, as ours does, all right of action within a given period after the fraud or mistake, regardless of the time the cause of action accrues. It must be supposed that the legislature of this State deemed ten years as ample time within which to discover the fraud and exhaust legal remedies upon purely legal demands, and the necessity of these prerequisites is no lawful

restraint in the sense of those words as used in section 21, article 4, chapter 71, General Statutes. By section 9, *Ibid.*, it is provided, in substance, that if a defendant, by departing from the State, absconding, or concealing himself, or by any other *indirect* means obstructs the prosecution of the action, the time of the obstruction shall not be computed as part of the period within which the action may be commenced. This section has been construed several times by this court (Walker v. Sayres, 5 Bush; Kennedy v. Foster,. 14 Bush; McDonald v. Underhill, 10 Bush, and others), but in none of them has it ever been held that the obstruction resulting from persistent legal resistance to a judgment was the character of obstruction meant by the statute. This case was pending in this court, on the first appeal, from November, 1861, until April, 1867, and on the second, from May, 1871, to March, 1874, and on each appeal it was demonstrated that erroneous judgments were rendered against the appellants in favor of appellees, at their instance, in the lower courts. And no facts appearing in the record showing that the appellants, by indirect means, obstructed the prosecution of the action, we are constrained to hold that the naked allegation that appellees were prevented from obtaining a judgment by appellants, who caused and compelled the delay, without stating the indirect means by which the obstruction was wrought, is not sufficient to bring this case within section 9, above referred to. The great length of time, twenty-one years, between the beginning of the suit and the issuance of the execution, would indicate the use of such means by appellants, if they caused the delay, as would be easily specified, or it evidences great laches in the prosecution of their claim to judgment by appellees, who, so far as this record and those filed with it show, are more to blame for the delay than the appellants.

Wherefore, the judgment is reversed and cause remanded, with directions to render judgment in accordance with this opinion.