## Schoolfield, Sr., et al. v. Provident Savings Life Assurance Society.

(Decided May 5, 1914.)

Appeal from Kenton Circuit Court
Common Law and Equity Division).

1. Fraud—Limitation.—Under Section 2519 of the statute, an action to obtain relief from fraud or mistake must be brought within ten years after the making of the contract affected by the fraud, or after the perpetration of the fraud.

2. Fraud—Limitation When Relief Is Sought on Account of Representations Made by an Insurance Agent.—Where a person was induced to make a contract of insurance by the false and fraudulent representations of the agent that the insured would receive certain benefits not specified in the policy contract, the fraud was perpetrated when the contract was accepted, and the statute of limitation barred an action to obtain relief after ten years from the perpetration of the fraud.

3. Fraud—Limitation.—In an action to recover annual premiums paid for ten years to an insurance company, when the insured

was induced to accept the policy and pay the premiums by reason of fraudulent representations made by the agent, the statute of limitation commenced to run when the representations were made, and after the expiration of ten years the insured could not maintain an action to recover the premiums.

S. D. ROUSE,  J. L. RICH for appellants.

ERNST, CASSATT & COTTLE and  J. C. W. BECKHAM  for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In May, 1891, the appellee Insurance Company issued a policy of insurance on the life of A. W. Schoolfield, Sr., for $2,000, payable to A. W. Schoolfield, Jr. In May, 1900, by agreement between the company, the insured and the beneficiary, the policy issued in 1891 was taken up and a new policy issued in its place.

In 1912 the insured and the beneficiary brought this suit against the company, charging that, as an inducement to procure the surrender of the old policy and the acceptance of the new in its place, through its agent acting for the company, it represented that in 1911, if the insured continued to promptly pay the premiums, he would be entitled to a paid-up policy of $2,000.00; or in lieu of the paid-up policy to $1,544.00, the cash value of the policy, and $2,656.00 cash in addition thereto, profits and dividends accrued on the policy, less the amount of a note due by the insured. They alleged that the company in 1911 failed and refused to perform either of these representations, and sought judgment against it for the amount to which, according to the representations of the agent, they were entitled. In short, they sought to recover on the contract as the agent represented it and not on the policy contract as it was written.

In an amended petition the plaintiffs waived their right to the relief sought in the petition, and, upon the ground that a fraud was practiced, asked that the contract of insurance be cancelled and that they have judgment for the amount of the annual premiums that had been paid on the new policy from 1900 to 1911, amounting in the aggregate to some $1,600.00. The cause of action was rested and relief sought upon the ground that, induced by the fraudulent and false representations of the agent as to the benefits that would accrue under the new policy, and which representations the company would

not perform, they were induced to accept it and surrender the old one and pay the premiums from 1900 to 1911.

The lower court decided that the plaintiffs' cause of action was barred by limitation, and dismissed the petition as amended.

Stating the plaintiffs' cause more fully, the amended petition averred, in substance, that the agent falsely and fraudulently represented to plaintiffs that the policy contract provided and the company would pay, at the maturity of the policy in 1911, provided all premiums were paid thereon as therein stipulated, the sum of $1,544.00, the cash surrender value thereof, and in addition thereto the sum of $1,249.00, also cancelling a note for $867.

That they relied upon and believed these false and fraudulent representations of the agent, and did, on the 4th day of May, August and November, in the year of 1901, and on the 4th day of February, May, August and November of each year thereafter, for a period of ten years from the date of May 4, 1901, pay to the company the sum of $41.66 on each of said dates during all of said years as a premium, paying in all to the defendant company on this account the sum of $1,666.40; that these several sums were paid to the company under the belief and in full confidence that the company would, at the maturity of said policy, if the insured should so long live, issue to August W. Schoolfield, Jr., a paid-up policy for life upon the life of the insured for $2,000.00, or pay to him the cash value thereof, to-wit: $1,544.00, and pay to him the additional sum of $1,249.00 and cancel the note the company held against him for $867.00; that when they made demand upon the company for the payment of the sums due on the policy, and for the fulfillment of the provisions thereof as they were represented by the agent they were for the first time informed that the company contended for a material and different construction of the terms and conditions of said policy from that represented by the agent.

They prayed for judgment against the defendant for the sum of $1,666.40, with interest on each of the several sums paid defendant, as aforesaid, from the date of the payment thereof, and for all proper and equitable relief.

In other words, the plaintiffs abandoned their cause of action for an enforcement of the contract and elected to prosecute the cause of action set up in their amended

petition, which sought a rescission of the contract and the recovery of the annual premiums paid, upon the ground that the insured was induced to accept the new policy and pay the premiums from 1900 to 1911, by the false representations of the agent as to the terms and conditions of the policy and what the company would do.

It seems that the company was willing to perform the contract according to its terms as written in the policy, but was not willing to perform its terms as they were represented by the agent who secured the exchange of the policies; while the insured insists that the company should carry out the contract as the agent represented it or else return the premiums that had been paid on the faith of these representations.

It will further be noticed that the cause of action is based on the alleged false and fraudulent representations made by the agent in 1900 that induced the surrender of the old and the acceptance of the new contract.

Section 2515, of the Kentucky Statutes, provides in part that "An Action for relief on the ground of fraud or mistake * * * shall be commenced within five years next after the cause of action accrued," and section 2519 provides "In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

Under these statutes a cause of action to obtain relief from fraud or mistake is not barred until five years after the discovery of the fraud or mistake, but in no state of case can an action to obtain relief be brought after the expiration of ten years from the time the contract was made that is sought to be avoided or the fraud was perpetrated from which relief is sought.

The fraud relied on in this case to authorize a rescission of the contract was perpetrated in 1900 when the agent, by the alleged false representations, induced the insured to accept the new contract, and this action was not brought for more than ten years thereafter; so that the action is plainly barred by the statute unless it be, as argued by counsel, that the statute was not put in motion until 1911, at which time it is said the Insurance Company first refused to execute the contract alleged to have been made with its agent, and which, according

to his representations, was to have been performed by the company in 1911.

We had before us in Provident Savings Life Assurance Society v. Withers, 132 Ky., 541, a case that cannot well be distinguished from this, and it seems to us controlling authority in support of the judgment of the lower court holding that the statute presented a bar to the recovery of the relief sought by the plaintiff. In the Withers case it appears that Withers took out two policies in the company in 1889. In 1894 he exchanged these policies for two other policies that expired in 1899. Shortly before 1899 he made another contract with the agent of the company by which two other policies were issued to him in place of the old ones, and in October, 1906, about seven years after the last policies were delivered to him, he brought suit against the company, charging that the policies he then had did not express the contract as it was represented to him by the agent, and that the agent, by fraud and misrepresentation, had induced him to accept policies materially different from those agreed upon, and he sought to require the company to deliver to him policies such as the agent represented had been delivered to him. It further appears that in the Withers case, as in the case we have, the agent made representations not contained in the policy contract, and that upon the faith of these representations Withers was induced to accept the contract, although the contract on its face did not support the representations. In other words, in the Withers case, as in this case, the insured relied on representations made by the agent independent of and not contained in the written contract of insurance. And in the Withers case, as in this case, an effort was made to obtain relief from the fraud practiced by the agent. But in the Withers case the court said:

"He kept the policies until he brought this suit on October 17, 1906, or about seven years after the policies were delivered to him. He cannot now say that he has not accepted the policies, for he kept the policies and regularly paid the premiums. By the statute the policy is the sole measure of the company's liability. We have held in several cases that nothing outside of the policy such as the application or other prior contract can be pleaded by the company to modify its liability under the contract. The statute is for the protection of both the company and the policy holder. Preliminary con-

tracts previous to the issual of the policy can be shown by neither to defeat its operation. The plaintiff cannot have relief under the special contract relied on because that was merged in the policies, and he cannot now have the policies corrected for fraud or mistake because the action is not brought within five years after the perpetration of the fraud or the making of the mistake, and after he knew or by ordinary diligence should have known it. He had the policies. He could have looked at them at any time. He cannot accept them, and, after keeping them for seven years, and after the time has expired within which he might have had the policies corrected for fraud or mistake, have relief in equity. To do this would be to encourage or reward supineness; and it would be to establish a rule that would destroy the value of written contracts.''

It is conceded that the Withers case would be controlling here if it were sought to require the company to perform the contract as represented by the agent; but it is insisted that the relief here sought is not a performance of the contract but a rescission and a return of the premiums that were paid. It is further argued that the fraud in this case was not discovered until 1911, at which time the representations made by the agent were to be performed, and, therefore, as the action was brought in 1912, the statute does not present a bar to the recovery of the premiums paid within ten years prior to the institution of the action.

The fault of this argument is that it overlooks or ignores the fact that the alleged fraudulent transaction, from which it is sought to obtain relief, occurred when the representations of the agent were made in 1900. It was in 1900 that the fraud, if any, was practiced. It was then that the false representations, if any, were made that induced the insured to surrender the old and accept the new contract. No misleading or fraudulent representations of any kind were made after 1900. It was the fraudulent representations then made that induced the insured to continue until 1911 to make the payments he now seeks to recover, and we think his cause of action accrued in 1900 and was peremptorily barred in ten years thereafter and before the institution of this suit. Whether it was barred in five years, it is not necessary to decide, as the ten year statute is certainly applicable.

We do not think the payment of the annual premiums had the effect of suspending the running of the statute

as long as they were paid or until the company refused to perform the written contract as it was represented by the agent. It was the representations of the agent and not the payment or receipt of the premiums that constituted the fraud complained of. The premiums paid were those that the contract provided for and the agent did not attempt to make any representations concerning them except to say that, if they were paid as stipulated in the written contract, the insured would receive certain benefits in excess of those provided for in the written contract. Under these circumstances the payment of the premiums according to the averments of the petition merely followed the fraud as a result of it.

In Fox v. Hudson, 150 Ky., 115, we had a question very similar to this. In that case it appears that in 1893 Mrs. Fox, who had a note for two thousand dollars against the Hudsons, was a party to an agreement with them by which their property was turned over to a trustee for the payment of their debts, and acting under this contract the trustee disposed of the property and distributed it among the creditors, including Mrs. Fox. In 1905 Mrs. Fox brought this suit against the Hudsons to recover the amount of her note, less certain credits that had been paid by the trustee. To this suit the Hudsons answered, relying on the contract made in 1893, and its full performance. Mrs. Fox sought to void this defense on the ground that she was induced to enter into it by the false and fraudulent representations made to her upon which she relied, that all of the property of the Hudsons would be turned over for the benefit of their creditors, when in fact it was not, and that within five years before the institution of her suit the Hudsons had received several thousand dollars insurance money, to a part of which she was entitled. To this pleading the statute of limitation was interposed, and in holding that the statute presented a good defense, it was said:

"Appellant's pleadings show that the fraud, if any there was, was perpetrated in 1893 when the contract of that date was entered into, and this action to obtain relief for that fraud was not instituted until more than eleven years afterwards. Counsel for appellant seeks to avoid the effect of this statute by showing that the insurance money was not actually collected by Hudson until 1903, or some two years before the institution of the action. But this circumstance does not help appellant. It is not at all material when the money was paid;

the only question is, when was the fraud practiced, and this question is answered by the pleading averring that it was practiced in 1893 when the contract was made."

The case of the Metropolitan Life Ins. Co. v. Blesch, 22 Ky. L. R., 530, is relied on by counsel for appellant, but we do not think it applicable. The Blesch case was an action to recover money paid under a mistake of law. It seems that the beneficiary, under a mistake of law, was induced to and did take out insurance upon the life of her father, which contract of insurance was void from the beginning, but that in ignorance of this fact, she continued to pay the premiums on it for a number of years, until she discovered the fact that the policy contract was void, and upon making this discovery she brought suit to recover back the preimums paid. In holding that she could recover, the court said:

"It is admitted and abundantly proven that appellee took out the policy of insurance in appellant's company on the life of her father without his knowledge or consent. It is equally well established that she was induced to do so by the representation of appellant's agent that in no contingency would she lose the money paid thereon, and there is no evidence that she was aware that this character of insurance was against public policy, or that it was one of the rules and regulations of appellant's company that such insurance would not be issued; and that premiums paid thereon would be forfeited to the company. * * * It has been repeatedly announced that 'no principle is more conclusively settled in this state than that when money has been paid through a clear and palpable mistake of law or fact, essentially affecting the rights of the parties, which in law, honor or conscience was not due and payable, and which ought not to be retained by the party to whom it was paid, it may be recovered back.' It is perfectly clear from the evidence that appellee paid the weekly premiums upon th policies issued to her upon the life of her father each week for twelve years, under a conviction that she held an enforcible contract against appellant, and this brings her claim within the rule announced in these decisions."

The radical difference between that case and this consists in the fact that in the Blesch case the plaintiff was allowed to recover back premiums paid under a mistake of law upon a policy that was void from the beginning, and upon which the company was at no time bound to pay anything; while in this case there was at all times

a valid and subsisting contract between the parties. It is not claimed here that the policy contract was void or non-enforcible, or that the insured would not receive the benefits stipulated in the policy. The relief is sought solely on the ground that in the policy contract the company did not agree to do all that the agent, independent of the written contract, represented that it would do. The fraud was not in the written contract of insurance but in the representations made by the agent, and 'we think that this action to obtain relief on account of this fraud was barred before the action was instituted, and therefore the judgment of the lower court should be affirmed.