## Graham's Administrator v. English, et al.

(Decided October 20, 1914.)

### Appeal from McCracken Circuit Court.

1. Trusts—May be Created by Parol.—A trust estate in personal property may be created by parol and proved by parol evidence.
2. Trusts—Sufficiency of Evidence to Show Creation of Parol Trust. —Where a wife gave to her husband five thousand dollars and told him to put it in the bank for their son so that it might be used for his care and education, and the husband accepted the fund and placed it in the bank to his credit as trustee for the child, this created a trust for the benefit of the child.
3. Trusts—Parol—Conversion of Trust Fund.—Where a trustee converted to his own use a trust fund in his possession, and afterwards, in an effort to correct the wrong, returned the fund to the donor who retained it for the purposes of the trust, the fund so retained by the donor was impressed with the character of the trust fund.
4. Fraud—Gift by a Parent to His Child—When Fraudulent.—Where a parent, without valuable consideration, makes a gift to his child for the purpose of creating a trust fund for the benefit of the child, and the parent at the time is in debt, the gift will be void as to existing creditors as in violation of section 1907 of the Kentucky Statutes providing that "every gift made by a debtor of his estate without valuable consideration therefor shall be void as to his then existing liabilities."
5. Limitation of Actions—Of Action to Obtain Relief for Fraud or Mistake.—Under section 2519 of the Statutes an action for relief for fraud cannot be brought after the expiration of ten years from the time of the perpetration of the fraud.
6. Limitation of Actions—Fraud—When Cause of Action Accrues.— Where a debtor in fraud of the rights of a creditor made a gift to his child in 1900 by creating a trust fund for the benefit of the child, and in 1909 there was purchased with the trust fund property which was conveyed to the child, the debtor's cause of action, which existed prior to the creation of the trust, accrued when the trust was created and not when the conveyance was made, and

was barred by the ten year statute of limitations. The purchase was merely an incident following the fraud which was practiced when the trust was created.

7.   Limitation of Actions—When Statute of Suspended by Conduct of Debtor.—Under section 2544 of the Statutes providing in part that "where the doing of an act necessary to save any right is restrained, the time covered by the restraint shall not be estimated in the application of any statute of limitation," the fact that the debtor resists, without obtaining an injunction or other prohibitory process, the collection of the debt, does not restrain the creditor from taking such action as may be necessary to secure his debt within the meaning of the Statute, and the Statute runs during the time the collection of the debt is so resisted.

T. L. CRICE, BERRY & GRASSHAM, JOHN K. HENDRICK and A. M. NICHOLS for appellant.

HAL S. CORBETT for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was filed by the appellant as plaintiff below against the appellees as defendants on July 6, 1910. The purpose of the suit was to set aside as fraudulent a conveyance made by Mrs. Nauheim on September 1, 1909, to the defendant, Mrs. English, as trustee for her infant child, the defendant, James E. English, Jr., upon the ground that the conveyance was fraudulent as to the plaintiff, a judgment creditor of Mrs. English and her husband, James E. English.

It was averred that the consideration for the property was paid by Mrs. English and her husband, who had the conveyance made to their infant child for the purpose of defeating the collection of the judgment against them, and a sale of the property was asked to satisfy the judgment debt.

The answer of the defendants, after denying that there was any fraud or want of consideration in the conveyance, set out, in substance, that Mrs. English on June 16, 1900, received from the sale of property owned by her $5,660.72, and on that day gave a check for $5,000 to her husband, with directions to collect the same and deposit the proceeds in a bank in his name as trustee for the benefit of their infant son. That afterwards English converted to his own use the whole of the $5,000 without the knowledge of Mrs. English, and thereafter, with the purpose of restoring the funds so misused, he, at divers times, paid to Mrs. English small sums aggregating

$3,000 for the use and benefit of their infant son, and out of the money so paid to her there was purchased for the use and benefit of the son the property sought to be subjected.

The answer also averred that the cause of action of the plaintiff accrued more than ten years prior to the commencement of the suit, and the statute of limitation was relied on to defeat a recovery.

The judgment, satisfaction of which was sought to be enforced, was obtained in 1905 on a note executed on June 9, 1899, and due one year after date.

There are three questions in the case: First, was a trust fund created for the benefit of James E. English, Jr.; second, if so was the creation of this trust fraudulent as to Mrs. Graham; third, is the plea of the ten year statute of limitation available?

It appears from the evidence that on June 16, 1900, Mrs. English received a check for something over five thousand dollars, the proceeds of property owned by her and which she sold. On the day she received this money, she testifies that, "Well, I put five thousand of it in the bank for Jimmie and paid debts with part and kept some to spend. Q. What do you mean when you say Jimmie? A. My son, little James E. English, Jr. Q. I will ask you if you put this money in the bank or if you directed your husband, James E. English, to put it there? A. I gave it to him to put it in the bank for Jimmie. Q. Why did you direct your husband to put this five thousand dollars in the bank for your infant son? A. I wanted this money in the bank to educate him and to take care of him if anything ever happened to him. Q. I will ask you to state if you know what became of the five thousand dollars you had set apart for the education of your child? A. Well, I did not know it was taken out of the bank until a year afterwards. Q. Who used the money? A. Mr. English. Q. Has he ever paid any of it back? A. He has. Q. How much? A. Well, he has paid at different times about, not quite, three thousand dollars. Q. Who bought this property sought to be subjected? A. I did. Q. With whose money was it paid for? A. With Jimmie's money. Q. Was any part of the money paid for that property James E. English's? A. Not a cent. Q. Can you state when he returned to you this money and in what amounts? A. He has given it to me at different places and at different times. I was three years collecting it. Q. How much

did you have in cash at the time you purchased the lot? A. I had in the neighborhood of three thousand dollars. Q. Where did you have it? A. In my box in a safety vault. It was in paper money. And I paid the money for the purchase price of the lot myself.''

James E. English testified that he did not furnish any of the money to pay for the property and had no interest of any kind in the funds that were used in its purchase. He said that when the property of his wife was sold in June, 1900, ''I took the check home to Mrs. English, and she asked me to get it cashed and deposit five thousand dollars of it as trustee for Jimmie in some bank in town and the other six hundred to bring home to her. Q. I will ask you if you accepted the five thousand dollars for your son under these conditions? A. I did. Mrs. English endorsed the check over to me. I went to the City National Bank, got exchange for five thousand dollars and six hundred dollars in cash and deposited five thousand dollars in another bank, as I was not doing business with the City National Bank at that time. Q. What became of the five thousand dollars? A. I am sorry to say, but in a year or so afterwards I got mixed up in a theatre deal and used the five thousand dollars belonging to my son. Q. Have you ever paid any of it back? A. Yes, sir; somewhere between twenty-five hundred and thirty-five hundred dollars of it was paid back to my wife for Jimmie. It was about the first of January, 1905, that I gave Mrs. English the first three hundred dollars on Jimmie's account and told her that I wanted to pay him what money I could from time to time, and not to let me know how much he had or where she put it. I would frequently give her fifty dollars or one hundred dollars on this account. Q. What bank did you deposit this money in? A. I think it was the First National. I was doing business with three different banks and had three separate accounts; one was a personal account and one as trustee and one was for Cudahy Packing Company. Q. Which of these accounts did you deposit this five thousand dollars with? I think it was to my account as trustee. Q. For James E. English? A. Yes, sir.''

There being no substantial contradiction of this evidence, the question is, was it sufficient to create a trust fund for the benefit of the infant son? Restating it briefly:—Mrs. English out of her own means gave to her husband five thousand dollars and told him to put it in a

bank for their son, so that it might be used for his care and education. Her husband took the five thousand dollars for this purpose and did put it in the bank to his credit as trustee, but afterwards withdrew it from the bank and appropriated it to his own use. Desiring to replace the fund, he commenced in 1905 giving to his wife at different times small sums of money, until he had paid to her about three thousand dollars, which she placed, as paid to her, in a safety vault, and finally used it in the purchase of the property deeded to her child.

It has been settled by numerous opinions of this court and is a general rule of law, that a trust estate in personal property may be created by parol and proved by parol evidence: Barkley v. Lane, 6 Bush, 587; Roche v. George, 93 Ky., 609; Brown v. Brown, 129 Ky., 138; Crews v. Crews, 113 Ky., 152; Krankel v. Krankel, 104 Ky., 745; Williamson v. Yager, 91 Ky., 282.

In the Barkley case it was said: "But the authorities all agree that to fasten a trust on property by mere parol declaration the language used must be clear and explicit, manifesting the owner's purpose to transfer the right, and pointing out with certainty both the subject of the trust and the person who is to take the beneficial interest."

In the Roche case it was said: "We think, to establish a trust by parol, the chancellor should require certain and undoubted testimony, and when it is conflicting in its character and such as to leave in the mind of the court a rational doubt as to the act of the testator by which the transfer is claimed to have been made, the chancellor should deny the relief."

In the Brown case it is said: "The subject-matter of the trust must be clearly ascertained, as well as the purposes of the trust and the persons who are to take the beneficial interests."

In the Krankel case the court expressed itself in this way: "The general doctrine is well settled that a completed parol voluntary trust is enforceable, and, in order to render such a trust valid and enforceable, the donor need not use any technical words or language in express terms creating or declaring the trust, but must employ language which shows unequivocally an intention on his part to create or declare a trust in himself for the donee."

In the Williamson case the court said: "If one delivers possession of personal property to a trustee to

hold as a gift for the donee, it is certainly a valid gift, and if he expressly says, or does acts amounting to the same thing, that he constitutes himself a trustee to hold the property for the donee, we perceive no reason why this should not be as valid and binding as a delivery of the property to a third person, to be held in trust for the donee. * * * Therefore, in seeking to enforce the trust, the donee must show that the donor has left nothing undone that is necessary to create it."

Applying to the facts as we have stated them the, principles announced in these cases, it is quite clear that Mrs. English created a valid, enforceable, parol trust in favor of her child when she gave to her husband the five thousand dollars, with directions to him to hold it for the use and benefit of the child, which he agreed to do.

Nor do we think the fact that after this the trustee misappropriated the fund and, in an effort to replace it, turned over to his wife to hold for the use of the child a part of the trust fund, operated in any manner to defeat the trust or deprive the fund in the hands of the wife of its trust character. It is a matter of no consequence into whose hands the trustee put the fund for safe-keeping, nor should the beneficiary be deprived of the fund because the trustee, in an effort to redeem the wrong he had committed, turned it over to the mother of the child for safe-keeping. The changes in the nature and identity of the particular fund are of course matters of no consequence. The real question is, whether the fund in the hands of Mrs. English was a part of the trust fund, and the evidence, as we think, shows it was. If, therefore, this were simply a question between the child and his parents, or either of them, there would be no room to doubt the right of the child to the fund.

But here the rights of a creditor of the donor are to be considered, and the rights of this creditor are to be settled according to principles that would not apply in a contest between the donor and the beneficiary.

At the time this trust fund was created both Mrs. English and her husband were indebted to Mrs. Graham. The note they had executed to Mrs. Graham on June 9, 1899, and which matured on June 9, 1900, six days before the trust was created, was a subsisting liability from the date of the note; so that the question arises, could Mrs. English, to the prejudice of the rights of Mrs. Graham, make a voluntary gift of money to her

child while the Graham debt remained unpaid? We think not.

Section 1907, of the Kentucky Statutes, provides in part that "Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities."

It would, therefore, seem evident that the gift made by Mrs. English to her child was in direct violation of this statute. And the fact that the gift is made by a parent to the child will not impart validity to the gift to the prejudice of a creditor. In Trimble v. Ratliff, 9 B. Mon., 511, the court said:

"The indebted father has, however, no right to give away his property to the detriment of his creditors, though it be done for the apparent purpose of equalizing one or more of his children with others, who have been fairly advanced. If he do so, the gift is deemed fraudulent and void as to creditors, without any inquiry as to the actual intent, either of donor or donee. * * * To prefer his children to the injury of his creditors, is, therefore, a fraud upon the creditors; and the donees, being mere volunteers, can not rely upon their own ignorance or innocence in the reception of the gift, but are absolutely implicated in the fraud of the donor, whether it be intentional, or implied by law, from the nature and consequences of his act." To the same effect are Creel v. Cloyd, 151 Ky., 627; Lowry v. Fisher, 2 Bush, 70.

Therefore, unless the rights of the creditor are barred by limitation, they must prevail over the right of the *cestui que trust* and the property be subjected to the payment of the creditor's debt.

In this action it is sought to obtain relief from a constructive fraud practiced by Mrs. English to the prejudice of her creditor, and it is insisted by counsel for the appellees that the fraud was perpetrated when the trust was created, and as more than ten years elapsed between that time and the institution of this action, it is barred by virtue of section 2519, of the Statutes, reading: "In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

More than ten years did elapse, but the creditor seeks to avoid the statutory bar upon the ground that Mrs. English resisted the suit brought by Mrs. Graham on the note, and her efforts to defeat liability on the note delayed a judgment against her for some four years, and this four years should be deducted from the ten years within which actions like this must be brought; and in support of this view reliance is had upon section 2544, of the Statutes, reading: "In all cases where the doing of an act necessary to save any right or benefit is restrained or suspended by injunction or other lawful restraint, vacancy in office, absence of an officer, or his refusal to act, the time covered by the injunction, restraint, vacancy, absence, or refusal to act, shall not be estimated in the application of any statute of limitations."

This statute, we think, has no application to this case. The fact that Mrs. English was resisting the suit of Mrs. Graham and endeavoring to prevent a judgment against her, did not interfere with the right of Mrs. Graham to attempt to subject this trust fund, which at that time was in the form of money. Mrs. Graham had a right at the time she brought her action to seek to subject this fund and to institute such proceedings as might be necessary to secure it during the pendency of the action, and until the rights of the parties were determined. The statute refers to a state of case in which the party entitled to relief is restrained from taking any action necessary to save his rights. Cavanaugh v. Britt, 90 Ky., 273; Knight v. Illinois R. Co., 143 Ky., 418; Phillips v. Shipp, 81 Ky., 436. Here no restraint whatever was imposed upon Mrs. Graham to prevent her from seeking to subject this fund. The mere fact that Mrs. English was resisting her liability on the note did not operate as a restraint, because it was not necessary that Mrs. Graham should have a judgment against Mrs. English before proceeding against this trust fund. It was not necessary that she should have a judgment and return of no property before seeking to subject it. If the creation of the trust was, as is now claimed, an attempt to defraud her by putting out of her reach money or property that she was entitled to subject to the payment of her debt, she unquestionably had the right at any time after the maturity of her debt to take such action as might be necessary to protect her from the imposition of this fraud.

Another argument advanced is that the fraud was not perpetrated until the purchase of the property in 1909. This is rested on the ground that the purpose of this suit is to set aside that conveyance on the ground of fraud.

The fraud, however, was not perpetrated by Mrs. English in the purchase of the property. The purchase was merely an incident following the fraud, which was practiced when the trust was created. Fox v. Hudson, 150 Ky., 115; Schoolfield v. Provident Savings Life Assurance Society, 158 Ky., 687.

It is likely true that the fraud was not discovered until the conveyance was put to record, but as we have stated, the fraud was practiced in June, 1900, when Mrs. English made a voluntary gift of the money to her child in violation of the statute forbidding gifts to the prejudice of creditors. It was then that Mrs. Graham's cause of action accrued. She undoubtedly had the right at any time after June 16, 1900, to assail the gift as fraudulent. The circumstance that she probably did not know of the transaction then or discover it until the conveyance here attacked was made, did not avail to prevent the running of section 2519 of the statute.

This being an action to obtain relief for fraud, there seems no escape from the conclusion that the ten year statute presents a peremptory bar in cases like this.

It was said in Dorsey v. Phillips, 84 Ky., 420: "This statute of ten years' limitation runs, not from the time of the discovery of the fraud, nor from the time the right of action first accrued, but from the time of making the contract or the perpetration of the fraud." To the same effect are Nave v. Price, 108 Ky., 105, and Phillips v. Shipp, 81 Ky., 436.

In Brown v. Brown, 91 Ky., 639, the court, in construing this statute, said: "If the party who was injured by the fraud or mistake is apprised of it at the time it is perpetrated, he must bring his action within five years thereafter; but if he is not apprised of it at the time it is perpetrated, he must bring his action within five years after the discovery; but in no case can he bring his action after the lapse of ten years from the making of the contract or the perpetration of the fraud."

It doubtless happens that in some cases the fraudulent contract is kept secret or at least is of such a nature as that its discovery is not practicable until after the ten years have run. But, however this may be, this

old statute furnishes a peremptory bar for relief after the expiration of ten years from the making of the contract or the perpetration of the fraud.

We think the lower court correctly decided the case, and the judgment is affirmed.