## BARBER *v.* WILDS.

---

EQUITY; FRAUDULENT CONVEYANCES; INADEQUACY OF PRICE; FRAUD.

1. Sec. 1120, D. C. Code [ 31 Stat. at L. 1368, chap. 854] providing "that the question of fraudulent intent shall be deemed a question of fact, and not of law," does not change the rule that parties shall be held to intend the natural and probable consequences of their acts; and, therefore, when it appears from a conveyance itself that its inevitable consequences will be to hinder, delay, or defraud creditors, the court must so hold, notwithstanding the denial of such intent by the parties to the conveyance.

2. While inadequacy of price alone is not conclusive evidence of an intent on the part of the parties to an alleged fraudulent conveyance to hinder, delay, or defraud creditors of the grantor, it is a circumstance to be considered with other facts and circumstances surrounding the transaction.

3. A deed by a debtor of his property, given for a valuable consideration, and which, although absolute on its face, is made in pursuance of an agreement between the parties, by the provisions of which a benefit is secured to the grantor at the expense of his creditors, is in law a fraud upon them, whether intended to be so by the parties or not.

4. Where, during the pendency of a suit which resulted in a judgment against him, a debtor entered into a secret agreement with his brother-in-law, under which the latter was to manage and control all the former's business affairs; advance as much money as, in his opinion, he deemed necessary or safe, and pay the debtor an annuity of $12,000 a year; and afterwards, in execution of the agreement, the debtor conveyed his real estate to his brother-in-law by a deed absolute on its face, but continued to reside on the land, and the grantee did not record the deed until after suit was brought by the creditor on the judgment in the jurisdiction where the land was situated, it was *held* in a suit by the judgment creditor, which was heard on bill and answers, that the deed was fraudulent as to creditors, al-

though the defendants, the parties to it, denied any intent on their part to hinder, delay, or defraud creditors, and alleged that the grantee had paid, or bound himself to pay, upon the faith of the agreement, over $600,000 in liquidating the debts of the grantor. (Distinguishing *Merillat* v. *Hensey,* 32 App. D. C. 64)

No. 1852. Submitted February 3, 1909. Decided April 6, 1909.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, vacating an alleged fraudulent conveyance, the cause having been heard on bill and answers.                                                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District of Columbia, declaring void, as to the original complainant, a deed to certain real estate in this District, dated July 17, 1903, from Amzi L. Barber and wife to John J. Albright. The cause was heard below upon bill and answers.

In September, 1899, Barber rented from the original complainant, William Wheeler Smith, certain premises in the city of New York for the term of ten years at an annual rental of $37,500. Barber failing to pay any of said rent, Smith, on August 21, 1900, brought an action against him in the supreme court of New York in the county of New York, and, on the 18th day of June, 1906, obtained a judgment for $28,561.40, and costs amounting to $395.91. Thereafter a reduction of $115.20 was made in the bill of costs and Smith became entitled to an execution in the sum of $28,842.11 with interest from June 18, 1906. Executions thereafter issued on said judgment to the sheriffs of the counties of New York, Richmond, Westchester, and Erie, respectively, all of which were returned unsatisfied. Thereafter supplementary proceedings were instituted in Erie county, in which proceedings John J. Albright, one of the defendants, was examined as a person holding property of said Barber. During his examination said Albright produced for the first time an agreement dated March 14, 1903, between said

Barber and himself. Said agreement, a copy of which was filed with complainant's bill, recites that Barber is financially involved and "has called upon the party of the second part (Albright) to assist him in his extremities." The agreement then purports to transfer to Albright all of Barber's property, wherever situate. The agreement further provides: "The party of the first part further covenants and agrees with the party of the second part that he will take up his residence in the city of Washington, and that he will devote himself largely and principally to business in that city, and, so far as necessary, to the conversion of so much of the property known as Belmont as may be disposed of without serious injury to the home which he has occupied upon that property. In this regard the judgment of the party of the first part shall be controlling as to what shall be sold and disposed of and what shall be retained, and nothing herein contained shall be deemed to limit the party of the first part to a continued residence in Washington nor the sole engagement in business opportunities which he may find in that city. The purpose of this provision is well understood between the parties hereto, and it is deemed best that it be not more fully expressed. The proceeds of all sales of any part of the Belmont properties shall be applied upon the mortgage on that property until such mortgage is fully paid."

Albright was to be absolute judge of the extent of the assistance he would render Barber, for the agreement says: "He (Albright) agrees that he will extend such assistance as, in his judgment, he may safely extend towards the handling of the indebtedness of the party of the first part. * * * And nothing herein contained shall be deemed to obligate the party of the second part to do anything or to advance any moneys or to assume any obligations until he shall deem fit so to do."

Article 7 of the agreement provides: "Until the party of the second part shall elect to cease rendering assistance to either the Locomobile Company of America or the party of the first part, and until he shall give written notice to the party of the first part of his election to so cease further action or interference, the party of the second part shall provide the party of the first part

an annuity of twelve thousand dollars ($12,000) per annum, payable monthly. This sum is provided for the support and maintenance of the party of the first part and his family, and it shall be devoted to that purpose, and to no other purpose whatever."

The agreement further provides that Albright shall keep an account of all transactions arising under the agreement, which shall be conclusive when the agreement is terminated.

On February 18, 1907, Smith instituted an action at law in the supreme court of the District against Barber based, upon said New York judgment of June 18, 1906. On March 11, 1907, Barber moved the court to extend the time in which to plead to the declaration, and on March 14th, following, the day upon which the motion was called to the attention of the court, and prior thereto, Barber's counsel stated that a deed dated July 17, 1903, from Barber and wife to said Albright, conveying said real estate in the District of Columbia called Belmont, had that day been placed of record. Thereafter, on March 18, 1907, judgment was entered in the supreme court against Barber for $28,842.11, with interest from June 18, 1906, and costs.

It is averred in the bill that said agreement of March 14, 1903, "shows on its face that said Barber, after the institution of aforesaid action in the supreme court of New York, denuded himself of all of his property of every kind and description whatsoever and wheresoever situate, except certain real estate hereinafter described. Your complainant avers that said agreement was executed by said defendants as part of a scheme to hinder, delay, and defraud said Barber's creditors, as clearly evidenced by the terms and recitals therein contained. As shown on the face of said agreement, said Barber assigned and conveyed to the said Albright property of the value of between one million ($1,000,000) and one and one-half millions ($1,-500,000) of dollars."

The bill further avers that the making of said agreement "was and is a part of defendants' scheme to hinder, delay, and defraud the defendant Barber's creditors and particularly your

complainant;" and that "the only property which the said defendant Barber owned within this jurisdiction, out of which any judgment could be satisfied, was the hereinbefore described real estate."

In the answers all fraud was denied, and it was also denied that said agreement and deed were made with intent to hinder or delay creditors. The answer of the defendant Barber admits that, with the acquiescence of said Albright, "he is now occupying said premises called Belmont as a home for himself and his family." The answer of said Albright, *inter alia,* admits the production by him of said agreement in said supplementary proceedings; denies knowledge of said indebtedness to Smith at the time said agreement was entered into; and avers "that upon the faith of the agreement aforesaid, and before the 18th day of June, 1906, when said judgment against said Barber in the supreme court of New York was obtained, he paid or obligated himself to pay over $600,000 in liquidating the indebtedness of said Barber. He further avers that the transfer of premises called "Belmont," made by said Barber and his wife to this defendant, was made in conformity to, and in execution of, the provisions of said agreement."

Said defendant further admits that said deed "was placed on record in order that it might have priority over any judgment which the plaintiff might obtain in said action at law, and to prevent any such judgment from becoming a lien on said property otherwise than as subject to said deed. He avers that he recorded said deed to secure to him his rights to said property by virtue of the agreement above mentioned, and without any intention whatever of hindering, delaying, or defrauding the creditors of said Amzi L. Barber."

*Mr. Charles L. Frailey* and *Mr. A. S. Worthington* for the appellants.

*Mr. John C. Gittings* and *Mr. J. Morrill Chamberlin* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

The cause having been heard on bill and answers, all averments of fact in the answers, so far as they are consistent with the documentary evidence in the cause, must be taken as true; but it by no means follows that, because the defendants have denied any attempt to hinder, delay, or defraud the creditors of Barber, the court is precluded from finding such intent from the facts and circumstances surrounding the transactions of the parties denying such intent.

Section 1120 of the Code [31 Stat. at L. 1368, chap. 854] provides "that the question of fraudulent intent shall be deemed a question of fact, and not of law." In *Means* v. *Dowd,* 128 U. S. 273, 32 L. ed. 429, 9 Sup. Ct. Rep. 65, it was held that a similar statute in Indiana "had not changed the law on the subject, and that the court must, in the first instance, determine upon the legal effect of the written instrument, and, if that be to delay creditors, it must be rejected."

In construing a similar statute the court, in *Thomson* v. *Crane,* 73 Fed. 327, said: "A voluntary deed is fraudulent by operation of law where the facts and circumstances clearly show that [the rights of] existing creditors are thereby prejudiced, without regard to whether there was any actual or moral fraud in the conveyance."

To the same effect are: 20 Cyc. Law & Proc. p. 463; *Farrow* v. *Hayes,* 51 Md. 505; *Hathaway* v. *Brown,* 18 Minn. 414, Gil. 373; *Smith* v. *Conkwright,* 28 Minn. 23, 8 N. W. 876; *Cunningham* v. *Freeborn,* 11 Wend. 241.

We conclude, therefore, that § 1120 was not intended to change, and does not change, the rule that parties shall be held to intend the natural and probable consequences of their acts. It follows that, if the inevitable consequences of a conveyance are to hinder, delay, or defraud creditors, the court must so hold notwithstanding the denial of such intent by the parties to such conveyance.

The pleadings in this cause show that Barber was financially embarrassed, and that he transferred by a secret agreement

all his property to Albright, and that, at the time this transfer was made, Barber was indebted to the complainant. The complainant states, and the answers do not deny, that the value of the property transferred was between $1,000,000 and $1,500,-000. According to the answer of the defendant Albright, he has paid, or obligated himself to pay, upon the faith of said agreement of March 14, 1903, something over $600,000 in liquidating the indebtedness of Barber. There is a wide margin between this sum and the value of the property transferred. While this fact alone is not conclusive evidence of an intent to hinder, delay, or defraud creditors, it is certainly a circumstance to be taken into consideration along with the other facts and circumstances surrounding the transactions of the parties. It further appears that Barber continued in possession and apparent ownership of the premises in the District of Columbia, and that Albright's interest therein was only made known when it became apparent that a longer delay in recording his deed would result, as he himself admits in his answer, in the complainant securing a prior lien thereon. It further appears that Barber, while purporting to convey said premises absolutely to Albright, "in conformity to, and in execution of, the provisions of said agreement," in fact was to continue to enjoy possession and an annuity of $12,000, which annuity was to be beyond the control of his creditors. The deed absolute on its face finally was placed of record. The agreement containing the trust in favor of Barber was not made public until Albright was examined under oath in supplementary proceedings. It matters not what the motives of Albright were, for, conceding that the parties to this transaction "probably never had in view the ultimate loss of the debts of the unsecured creditors by their acts, and may really have supposed that they were taking the best means to insure payment to them all, yet the law has said that the means which they took is to be regarded as a fraud in law by necessary implication." *Means* v. *Dowd, supra,* 281.

The facts of this case bring it within the ruling in *Lukins* v. *Aird,* 6 Wall. 78, 18 L. ed. 750. In that case Aird conveyed to one Spring, for a consideration of $1,200, lots which had cost

him $1,900, Spring agreeing that Aird should have the use of the lots for one year free of rent, with the privilege, so long as Spring did not desire to make use of them himself or to sell them, to rent them at $100 a year, the purchase price being fixed in consideration of this reservation. Aird thereafter occupied the lots for about two years and a half. Lukins, who was one of Aird's creditors, filed a bill asking that the conveyance might be declared void. The court, in disposing of the case, said: "The law will not permit a debtor in failing circumstances to sell his land, convey it by deed, without reservations, and yet secretly reserve to himself the right to possess and occupy it for a limited time, for his own benefit. Such a transfer may be upon a valuable consideration, but it lacks the element of good faith; for while it professes to be an absolute conveyance on its face, there is a concealed agreement between the parties to it, inconsistent with its terms, securing a benefit to the grantor, at the expense of those he owes. A trust, thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right,—the right of possession,—and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors."

Barber undoubtedly had the right to obtain assistance from Albright, and, in consideration therefor, to transfer to Albright property sufficient fully to reimburse him. Such a transfer would have been no more open to objection than a bona fide sale or mortgage; but Barber certainly had no right to place all his property in the hands of Albright, beyond the reach of his creditors, under an arrangement whereby he was to receive each year out of his own estate the substantial sum of $12,000. This sum was not to be paid him as compensation for his services in caring for the property transferred, but, on the contrary, formed one of the considerations for the agreement. The transfer to Albright was of all Barber's property and was secret. The deed to Belmont purported to be absolute and was also secret. Barber remained in possession of Belmont, and the annuity reservation in his favor was also secret. From the facts and circumstances surrounding the transactions between Barber and

Albright, as disclosed by the record, the conclusion is irresistible that this deed operated "to hinder, delay, or defraud" the complainant, and this conclusion demands the setting aside of the conveyance.

In *Merillat* v. *Hensey,* 32 App. D. C. 64, we sustained an assignment of a cause of action of an insolvent debtor under a secret arrangement to pay the debtor any surplus after the satisfaction of the claim of the creditors, because it appeared from all the facts and circumstances surrounding the case that the acts of the parties were consistent with an honest purpose, and that other creditors were not in fact prejudiced. In that case the value of the thing assigned proved to be less than the preferred debt, and it was apparent that the agreement as to overplus was a mere incident to, and not in any sense a reason for, the assignment.

In this case it is quite apparent that Barber's affairs had become involved. Realizing that something had to be done to save him from financial ruin, he applied to Albright, his brother-in-law, for assistance. Albright, being apparently a man of good business judgment, decided that no progress could be made unless he could absolutely control the situation. He, therefore, entered into the agreement of March 14, 1903, under which he was to manage and control all of Barber's business affairs, advance as much money as, in his judgment, he deemed necessary or safe, and pay Barber said annuity. To place all of Barber's property absolutely beyond his control, and, of course, beyond the control of his creditors, the deed to Belmont was executed. It is inconceivable that a court of equity would sustain such a conveyance as against existing creditors under the circumstances surrounding it. As before stated, whatever may have been the real motive of Mr. Albright in coming to the assistance of his brother-in-law, the inevitable result of taking a conveyance of this piece of real estate with the secret trust attached was to hinder, delay, or defraud the complainant.

The decree below is, therefore, affirmed, with costs.

*Affirmed.*

An appeal by the appellants to the Supreme Court of the United States was allowed April 13, 1909.