### HART v. UNITED STATES.
### No. 14813.

United States Court of Appeals
Eighth Circuit.
Nov. 10, 1953.

E. M. Arnold, Little Rock, Ark., for appellant.

Cecelia H. Goetz, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., James T. Gooch, U. S. Atty., and Gerland P. Patten, Asst. U. S. Atty., Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This is an action by the United States to collect taxes from an individual and three corporations and to impress its lien for those taxes on the property of that individual and the corporations. All are insolvent.

Elizabeth Shoemaker, the individual referred to, owned and operated two taxicab companies, the Yellow Cab Company and the Checker Cab & Baggage Company. She also owned the Yellow Cab Building Company. Considerable rolling stock and equipment was owned by the taxicab companies. The Building Company owned certain real estate.

In 1947 an investigation was begun by the Internal Revenue Department of the tax returns filed by Mrs. Shoemaker and the two cab companies for the years 1943 through 1945. This investigation ripened into notices of deficiency assessments for 1943 through 1945, which were sent to Mrs. Shoemaker and the two cab companies in August, 1949. On October 20, 1949, Mrs. Shoemaker and the cab companies gave to Mrs. Audria Hart, Mrs. Shoemaker's sister, a promissory note for $59,900.00, secured by a chattel mortgage on all the personal property of the taxicab companies. The mortgage was recorded on November 2, 1949. At about the same time, Mrs. Shoemaker executed a pledge of her

stock in the cab companies and the Yellow Cab Building Company to Mrs. Hart. On November 4, 1949, a petition was filed in the Tax Court of the United States by the taxpayers, praying for redetermination of the assessed deficiencies. June 4, 1951, the Tax Court of the United States entered judgment against Mrs. Shoemaker for $67,112.73, against the Yellow Cab Company for $81,254.33, and against the Checker Cab for $134,-133.33. A notice of lien of the judgment against Mrs. Shoemaker and the Yellow Cab Company was filed July 18, 1951, in Pulaski County, Arkansas, the residence of the companies and Mrs. Shoemaker. On the same day the Deputy Collector demanded payment. On July 30, 1951, he seized the personal property of the Yellow Cab Company. The notice of lien of the judgment against the Checker Cab Company was filed on August 8, 1951.

On August 3, 1951, Mrs. Hart brought an action in the Chancery Court of Pulaski County, Arkansas, against Mrs. Shoemaker and the two cab companies on her note, and sought the foreclosure of the chattel mortgage and the pledge of the stocks securing the note. In that action it was also requested that the Chancery Court appoint a receiver. A receiver was appointed that day. He immediately took possession of the property of the Checker Cab Company. The Yellow Cab Company, having been previously seized by the Deputy Collector of Internal Revenue on July 30, 1951, was turned over to the receiver upon presentation to the Deputy Collector of the order of the Chancery Court appointing the receiver. On August 20, 1951, the United States filed a petition to intervene in the suit pending in the Chancery Court, alleging its lien was superior to that of Mrs. Hart. The petition to intervene was granted.

September 26, 1951, the United States filed an action in the United States District Court for the Eastern District of Arkansas, against Mrs. Shoemaker, Mrs. Hart, and the Yellow Cab Building Company, in which it sought to restrain a threatened increase in the capital stock of the Building Company, which would result in a deterioration in the value of the existing stock, pending determination of the interest of the United States in that stock against the claim of Mrs. Hart. The complaint prayed that the claim of the United States be declared to be "prior and paramount to the purported claim, if any, of Audria Hart in and to said stock, and that said stock be sold and the proceeds applied to the claim of the United States." September 27, 1951, the receivership action in the Chancery Court was, on the request of Mrs. Hart, extended to include not only the property of her sister, Mrs. Shoemaker, and the cab companies, but also the Yellow Cab Building Company, Inc. A receiver was appointed for the latter company, who took possession of its property.

November 2, 1951, the Acting Collector of Internal Revenue filed a notice of claim in the Chancery Court for taxes due the United States from all the defendants in the Chancery Court in the total amount of $277,115.56 for the years 1944 through 1951. The case in the Chancery Court was set for trial on March 27, 1952. The day before that case was to be tried, on March 26, 1952, the United States requested and was granted leave to withdraw its intervention in the Chancery Court action. On March 27, the state court entered a judgment in favor of Audria Hart for the amount of the promissory note, $59,-900.00, and ordered the sale of the property covered by the chattel mortgage on April 30, 1952. Five days before the date of this sale, to wit, on April 25, 1952, the United States amended its complaint pending in the United States District Court by joining the cab companies as defendants, and requested that a judgment be entered against all three of the taxpayers for the amount found due by the Tax Court and to declare in such judgment that the lien of the United States for such taxes be a prior lien as of the date of the filing of the assessment lists on all the property owned by

these taxpayers which was then in the possession of the Chancery Court receiver, and that its lien be declared to be prior to any right, title or interest of Audria Hart. The amended complaint further sought an injunctive order restraining the disposition of any of this property, asked for the appointment of a receiver to take charge of it, and an order of sale of the property to satisfy the Government's tax judgments. Mrs. Hart answered, denying the jurisdiction of the court, alleging that all the property involved was under the control of the state court and not subject to the control of the United States Court, and asserting that the state court had exclusive jurisdiction.

On the same day, April 25, 1952, the United States filed a separate action in the United States District Court, in which Mrs. Hart, Mrs. Shoemaker, and H. S. Nixon, the commissioner appointed by the Chancery Court to conduct the foreclosure sale on April 30, 1952, were made defendants. The complaint prayed that a temporary restraining order be issued, restraining these defendants from selling the stock of the corporations and any other property ordered sold by the Chancery Court in its decree of March 27, 1952, pending the final determination of the action of the United States then pending against Mrs. Hart, Mrs. Shoemaker, and the corporations, in the United States District Court. This separate action for a temporary injunction was later consolidated with the original action. A preliminary injunction was issued by the United States District Court on September 30, 1952; the sale advertised for April 30 and the proceedings in the state court came to a halt pending the determination of the actions in the United States Court. Upon trial of the consolidated actions, the United States District Court found that the notes and chattel mortgages were executed at a time when the makers of those instruments were insolvent and were made for the fraudulent purpose of defeating the Government's tax claims. The judgment went further than merely

establishing the priority of the Government's lien against the lien claimed by Mrs. Hart and enjoined the further administration of the taxpayers' property by or at the direction of the state court. The present appeal is from that judgment and challenges it upon the following grounds:

(1) That the United States, having asked leave to intervene in the Chancery Court, is estopped from thereafter withdrawing from that court and instituting an independent proceeding in the United States Court for the purpose of establishing priority of its lien;

(2) That the United States Court did not have jurisdiction of the separate action of the United States because of the pendency of the action in the state court and the possession by the state court of the taxpayers' property in the state court proceeding;

(3) That the findings of fact of the trial court to the effect that the note and mortgages were fraudulent as to the United States and made for the purpose of defeating the claim of the United States were clearly erroneous and not supported by substantial evidence; and

(4) That "The court did not take into consideration certain undisputed facts, which fixed the rights of the parties."

The facts were all stipulated except upon the question of whether the notes, chattel mortgages and assignments of the stock were ineffectual to create a lien in favor of Mrs. Hart superior to the lien for taxes of the United States.

Appellant relies on Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133, and Department of Financial Institutions v. Mercantile-Commerce Bank & Trust Co., 7 Cir., 92 F.2d 639, to support her claim of estoppel. Neither of those cases is controlling on the facts. In the Pufahl case the receiver of a national bank litigated the question of whether an assessment made against a deceased stockholder in the bank had to be filed in the Probate Court of Illinois within the period provided by the state statute, to a final conclusion in the

Illinois courts. Certiorari was granted by the United States Supreme Court "to resolve a conflict respecting the construction of relevant federal statutes." [299 U.S. 217, 57 S.Ct. 154.] In the course of the opinion the Supreme Court stated that the receiver might, as he elected to do, prosecute his claim in a state court, and that if he does, "at least in the absence of congressional declaration to the contrary," the litigation will be governed by the common and statutory law of the state. Bearing on a question yet to be considered, the court stated that while a litigant entitled to go into the federal court by reason of diversity of citizenship or because he was a federal officer could not be denied the right to prosecute an action to judgment in the federal court, such judgment could do no more than adjudicate the validity and amount of his claim where the res, in that case the estate sought to be reached, was already in the possession and under the control of the state court. And, that "the marshaling of that [receiver's] claim with others, its priority, if any, in distribution, and all similar questions, are for the probate court upon presentation to it of the judgment or decree of the federal court." Illustrating the procedure to be followed, the court said: "Thus, though a receiver should resort to the United States District Court he would need to present, in a probate court, any judgment obtained, if he desired payment from the assets under the control of the latter."

■ While the Pufahl case, with many others, is authority on the question of whether the prior possession of the res by a state court in a proceeding in rem or quasi in rem may be disturbed, and is also authority, likewise with many others, that one having the right to prosecute an action in a federal court may do so to establish rights in personam, although a procedure and forum are also available in the state courts, the Pufahl case is no authority on the facts it involved for a holding that when, as here, the United States withdrew from the state court proceeding before trial and did, as it had a perfect right to do under special statute,—go into a federal court to establish its tax claim, 28 U.S. C.A. § 1345, that it was estopped from doing so because it had, by voluntary intervention, once called the state court's attention to the existence of its claim to the res.

The case of Department of Financial Institutions v. Mercantile-Commerce B. & T. Co., 7 Cir., 92 F.2d 639, does use the term "estoppel" in denying to a party, entitled to sue in the federal courts because he was an officer of the United States, the right to go into a federal court and disturb the possession of the res which was in custodia legis in the state court. In that case the court held that the objective of the action in the federal court was to remove the res from the jurisdiction of the state court, which could not be done. The term estoppel as there used applied to the peculiar facts of that case. There was no estoppel in this case, even if we assume that there could be an estoppel of the United States, absent necessary incidents of res judicata.

■ The right of the United States to maintain the action in the federal court to establish its tax claim and have adjudicated the priority of its tax lien against the claim of a prior lien by Mrs. Hart is clear. Those rights were personal between Mrs. Hart and the United States. Their determination did not disturb the right of possession of the property in the custody of the Chancery Court. Hence, they could be litigated in either court, principles of comity not preventing. As stated in Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850:

"Where the judgment sought is strictly *in personam*, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which

may be set up as *res adjudicata* in the other. See Buck v. Colbath, supra, 3 Wall. [334], 342, 18 L.Ed. 257; Kline v. Burke Construction Co., 260 U.S. 226, and cases cited at pages 230–231, 43 S.Ct. 79, 67 L.Ed. 226. But if the two suits are *in rem* or quasi *in rem*, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disastrous conflicts in the administration of our dual judicial system, see Peck v. Jenness, 7 How. 612, 625, 12 L.Ed. 841; Taylor v. Carryl, 20 How. 583, 595, 15 L.Ed. 1028; Freeman v. Howe, 24 How. 450, 459, 16 L.Ed. 749; Buck v. Colbath, supra, page 341 of 3 Wall.; Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., supra, page 61 of 177 U.S. [51], 20 S.Ct. 564, [44 L.Ed. 667], and to protect the judicial processes of the court first assuming jurisdiction, Wabash R. Co. v. Adelbert College, supra, page 54 of 208 U.S. [38], 28 S.Ct. 182, [52 L.Ed. 379]; Palmer v. Texas, 212 U.S. 118, 129, 130, 29 S.Ct. 230, 53 L.Ed. 435, the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other. This is the settled rule with respect to suits in equity for the control by receivership of the assets of an insolvent corporation. Leadville Coal Co. v. McCreery, 141 U.S. 475, 477, 12 S. Ct. 28, 35 L.Ed. 824; Porter v. Sabin, 149 U.S. 473, 480, 13 S.Ct. 1008, 37 L.Ed. 815; Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., supra; Wabash R. Co. v. Adelbert College, supra; Palmer v. Texas, supra; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88, 89,

43 S.Ct. 480, 67 L.Ed. 871; Harkin v. Brundage, 276 U.S. 36, 48 S.Ct. 268, 72 L.Ed. 457."

See also Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256.

The language heretofore quoted from Pufahl v. Estate of Parks that—"The marshaling of that claim with others, *its priority, if any,* in distribution \* \* \* are for the probate court upon presentation to it of the judgment or decree of the federal court", was used in the sense that the state court having prior custody of the res would distribute it and could not be divested of its custody and right to do so, and does not mean that the state court, having prior possession of the res, has sole jurisdiction to determine rights in personam to the res. That the court in the Pufahl case did not hold that a litigant could not litigate in a federal court the priority of his claim or lien to property in the custody of the state court with another person claiming a prior lien to the property is clear from Commonwealth Trust Co. of Pittsburgh v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 602, 80 L.Ed. 920. In the latter case one of the objects of the action in the federal court was to establish a claim and its priority of payment out of funds in the hands of a receiver of a state court. Likening the control of the fund in the custody of the state court to that which a probate court exercises over such fiduciaries as guardians, administrators, executors, etc., the court said:

"The jurisdiction of federal courts to entertain suits against the latter [fiduciaries] is clear, when instituted in order to determine the validity of claims against the estate or claimants' interests therein. Such proceedings are not *in rem;* they seek only to establish rights; judgments therein do not deal with the property and order distribution; they adjudicate questions which precede distribution. Byers v. McAuley, 149 U.S. 608, 620, 18 S.Ct. 906, 37 L.Ed. 867; Security Trust Co. v. Black River National Bank, 187 U.S. 211, 227, 23 S.Ct. 52, 47

L.Ed. 147; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 73 L.Ed. 669; Harrison v. Moncravie, 8 Cir., 264 F. 776, 779. Property in its (the trustee's) possession is not *in custodia legis* as in case of receivers. Hinkley v. Art Students' League, 4 Cir., 37 F.2d 225, 226; Appeal of Hall, 112 Pa. 42, 54, 3 A. 783; Strouse v. Lawrence, 160 Pa. 421, 425, 28 A. 930; Goodwin v. Colwell, 213 Pa. 614, 616, 63 A. 363; Nevitt v. Woodburn, 190 Ill. 283, 289, 60 N.E. 500."

■ Insofar as the action in the federal court sought, and the judgment of that court established, only rights in personam between the United States and Mrs. Hart, there was no prohibited interference with the jurisdiction of the Chancery Court. Nor was there an abuse of discretion in not deferring the exercise of the federal court's jurisdiction on principles of comity. Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920. But that part of the relief sought and granted which involved an injunction against the Chancery Court's sale of the property in its hands and the removal of that property from the possession and control of the Chancery Court to the federal court is an entirely different matter. The issuance of the injunction was improper. Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226. The United States seeks to justify the injunction on the ground that the parties were different in the Chancery Court and because there was no substantial identity in the interests represented, in the rights asserted, and in the purposes sought in the two proceedings. None of those reasons avoid the fact that by ordering a sale of the property in the federal court that court was drawing to it the possession, control, and administration

of the property which was theretofore rightfully in the possession and control of the Chancery Court. That it could not do. Pufahl v. Estate of Parks, 299 U.S. 217, 226, 57 S.Ct. 151, 81 L.Ed. 133; Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 465, 59 S.Ct. 275, 83 L.Ed. 285; Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850; United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

■ The contention that the findings of fact on the question of whether the notes and chattel mortgages were without consideration and made for the purpose of defrauding creditors were clearly erroneous is without merit. It will serve no good purpose to review the evidence. An examination of the record discloses adequate evidentiary support for the court's findings.

■ The point that the court did not take into consideration certain undisputed facts which fixed the rights of the parties is based upon the premise that since Mrs. Hart's mortgage was filed prior to the date when the tax assessments became liens, that fact in itself establishes the priority of the mortgage under the statute creating the tax lien[1]. That argument ignores the fact that if the mortgage was made under such circumstances that, although it might be good between the parties as the Chancery Court held, it still was ineffectual to constitute a senior lien against other creditors, it was not such a mortgage as the statute gives priority to. The mortgage having been found to be invalid for the purpose of creating a lien prior to that of the United States, the statute does not apply to it.

For the reasons stated, the judgment must be modified to eliminate therefrom interference with the custody, control and administration of the property in the Chancery Court. As so modified, it is affirmed.

1. "(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—". 26 U.S. C.A. § 3672(a).