**Nell M. LEONARDO, Appellant,**

v.

**Peter S. LEONARDO and Rebecca Auteri, Appellees.**

No. 14006.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 5, 1957.

Decided Jan. 9, 1958.

Mr. Joseph M. Bonuso, Washington, D. C., submitted on the brief for appellant.

Mr. James G. Tyson, Washington, D. C., submitted on the brief for appellees.

Before WILBUR K. MILLER, BAZELON and BURGER, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Nell M. Leonardo sued in the United States District Court for the District of Columbia to be declared the common law wife of Peter L. Leonardo and, as such, entitled to an inchoate right of dower in the real estate at 1764 Columbia Road, N. W., allegedly owned by him at the time of marriage. During their courtship, she charged, Leonardo told her he had bought the property on May 4, 1945, and that when they were married she would share in the income derived therefrom. The marriage was consum-

mated July 9, 1945, she alleged, and thereafter the parties occupied a part of the building and rented the remainder, the wife contributing money and services to improve the premises. Due to marital difficulties, the Leonardos separated December 25, 1949.

The wife pleaded that in 1953 through her attorney she learned for the first time that on May 8, 1945, the day after the deed to Leonardo had been recorded, the latter executed a deed conveying the realty to his daughter, Rebecca Auteri, which deed was not recorded however until December 27, 1949—two days after their separation. She also learned then for the first time that Rebecca had given her father a power of attorney dated October 23, 1948, authorizing him to manage the property and live in it rent free. This instrument was not recorded until January, 1950, the month following the separation. It was also alleged that the conveyance to the daughter was without consideration and "in fraud and deceit of the plaintiff's rights as the contemplated wife * * * and was made with the intent to keep the plaintiff from participating, according to law, in her dower interest in said real estate."

The District Court held the parties had entered into a common law marriage July 9, 1945. With respect to Mrs. Leonardo's claim to dower, the court found:

"That the property located at 1764 Columbia Road, N.W., Washington, D. C., was deeded by the defendant Leonardo to his daughter before the common law marriage was entered into; that the daughter paid $10 as consideration for the said property; and that thereafter she executed a power of attorney to the defendant Leonardo, which authorized him to manage the property and live therein rent free; that no misconduct was shown against the defendant, Rebecca Auteri, to warrant

a judgment or decree against the said property.

"That the evidence was insufficient to establish that the plaintiff had any interest in the Columbia Road property."

Upon these findings the court concluded as a matter of law and adjudged:

"That title to the property located at 1764 Columbia Road, N.W., in the City of Washington, District of Columbia was acquired by the daughter of the defendant Leonardo before the common law marriage was entered into, and that the plaintiff acquired no interest in the said property."

On Mrs. Leonardo's appeal from so much of the judgment as denied her the right of dower, we reversed because the trial court had made no finding as to whether the deed was delivered to the daughter before the consummation of the common law marriage. We considered it essential to have the trial judge's finding on the point "as to which," we said, "there seems to be substantial doubt on the basis of this extremely confusing and inadequate record";[1] for if the deed was not delivered before the marriage, Mrs. Leonardo is clearly entitled to a dower interest in the property. For that reason, we simply remanded the case to the trial court to make a finding on the delivery point, saying "If necessary for this purpose, further evidence should be taken." In doing so, we did not reach the principal question, which we described as being whether the deed to the daughter "was merely a paper transaction designed only to defeat appellant's rights but not actually affecting the ownership of the property." Leonardo v. Leonardo, 1956, 99 U.S.App.D.C. 291, 239 F.2d 454, 455.

After remand, Leonardo offered no further evidence, nor did his wife. Nevertheless, on the basis of the original record, which of course remained "ex-

---

1. Indicia of fraud apparent in the record caused us to be in doubt as to whether the deed had been delivered, despite Leonardo's testimony that he "handed" the deed to his daughter.

tremely confusing and inadequate," the trial court made this additional finding:

"From the testimony of the defendant Auteri and the evidence as to the deed and power of attorney and the recording thereof, that the deed in question was delivered prior to the establishment of the common-law marriage * * *"[2]

The order which contained the foregoing finding and certain comments concluded thus:

"The judgment of this Court, which was based not so much on the evidence as on the failure of the plaintiff's evidence, with these additional findings and comments, is reaffirmed."

Mrs. Leonardo again appeals.

■ Since the District Court has supplied a finding on the doubtful issue of delivery, the absence of which caused us to reverse and remand on the first appeal, the case is before us on the merits of Mrs. Leonardo's charge of fraud, which we did not reach before. Our statute, which declares that, subject to one exception, a fraudulent conveyance shall be void as against the person defrauded, is § 12–401 of the D.C.Code (1951). It reads as follows:

"Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands or rents and profits issuing from the same, or in goods or things in action, and every charge upon the same, and every bond or other evidence of debt given, or judgment or decree suffered, with the intent to hinder, delay, or defraud creditors or other persons having just claims or demands of their lawful suits, damages, or demands, shall be void as against the persons so hindered, delayed, or defrauded: *Provided,* That nothing herein shall be construed to affect or impair the

title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor: *Provided further,* That the question of fraudulent intent shall be deemed a question of fact and not of law. (Mar. 3, 1901, 31 Stat. 1368, ch. 854, § 1120.)"

This statute is of ancient origin. It springs from St. 13 Eliz. c. 5 (1570), and its counterpart has been enacted in many states. 5 Tiffany, Real Property § 1323 (3rd ed. 1939); Carter v. Richardson, Ky.1901, 60 S.W. 397. Such statutes have long been liberally construed to suppress fraud. In 1601 in Twyne's Case, 30 Co.Rep. 80b, 76 Eng.Rep. 809, 815–816, it was said:

"And because fraud and deceit abound in these days more than in former times, it was resolved in this case by the whole Court, that all statutes made against fraud should be liberally and beneficially expounded to suppress the fraud. * * *"

Fraud and deceit continue to abound today, so liberal construction of this statute is still necessary. Crowder v. Crowder, 1919, 125 Va. 80, 99 S.E. 746.

■ In regard to her property rights arising from marriage, a wife is one of the "other persons" protected by the statute against a fraudulent conveyance. The Illinois Supreme Court so interpreted a similar statute in Higgins v. Higgins, 1905, 219 Ill. 146, 76 N.E. 86, 88–89, making this comment:

" * * * It is as much a fraud for a man, on the eve of his marriage, unknown to his wife, to make a voluntary conveyance of property to defeat the interests which she would acquire in the property by virtue of her marriage, as it is for

---

**2.** We note in passing that this finding is not supported by the evidence upon which the court based it. Rebecca Auteri said nothing about delivery, and the other evidence mentioned does not indicate de-

livery previous to the marriage. Apparently the court regarded Leonardo's statement that he handed the deed to Rebecca as unworthy of belief, since he did not rely upon it.

a debtor who contemplates contracting a debt to voluntarily dispose of his property in order to defeat the interest of future creditors. 14 Am. & Eng. Ency. of Law (2d Ed.) 252. * * * "

See also Crowder v. Crowder, supra; and Goff v. Goff, 1906, 60 W.Va. 9, 53 S.E. 769. Even in the absence of a statute such as ours, equity will act to protect a wife's dower when it appears the husband fraudulently made an antenuptial conveyance of real estate without her knowledge. Dorrough v. Grove, 1952, 257 Ala. 609, 60 So.2d 342.

In the law of fraudulent conveyances, the term "badge of fraud" means any fact tending to throw suspicion upon the questioned transaction. It raises an inference that the conveyance was fraudulent, and throws upon the parties to the transaction the burden of making a satisfactory explanation by more persuasive proof of good faith than is ordinarily required. Cf. United States v. Shoemaker, D.C.E.D.Ark., 110 F.Supp. 898, *modified as to other points sub nom.* Hart v. United States, 8 Cir., 1953, 207 F.2d 813. Inadequacy of consideration is a badge of fraud. Granger v. Granger, 1941, 296 Mich. 357, 296 N.W. 288; Harris v. Shaw, 1954, 224 Ark. 150, 272 S.W.2d 53. The grantor's continued possession of the property following conveyance to another is also held to be a badge of fraud. Renn v. Renn, 1944, 207 Ark. 147, 179 S.W.2d 657; Granger v. Granger, supra; Godfrey v. City of Cochran, 1951, 208 Ga. 149, 65 S.E.2d 605. Cf. Barber v. Wilds, 1909, 33 App. D.C. 150. Failure to record the deed also constitutes an indication of fraud. Sweeney v. Farmers' State Bank, 1927, 219 Ky. 471, 293 S.W. 959.

Mrs. Leonardo's testimony sustained the allegations of her complaint which we summarized above. Leonardo testified that he paid $4,000 for the property and conveyed it to his daughter, Rebecca, for $10.00, which was the entire consideration; that he retained possession and control, and did not pay rent to Rebecca nor account to her in any way. It also appeared, as we have said, that the deed was withheld from record more than four years, and was lodged two days after the separation.

Thus the conveyance by Leonardo to his daughter wears all three of the badges of fraud to which we have just alluded. Although it was incumbent upon him to do so, he offered no satisfactory evidence to explain or justify the three undisputed facts which tainted the transaction, so the presumption of fraud therefrom was not rebutted, but remained in full vigor. In fact it constituted the only evidence either way as to whether Leonardo had a fraudulent intent when he executed the deed.

But, even if he had such intent, the grantee, Rebecca Auteri, is protected by the proviso of § 12–401 of the Code if she was a purchaser for a valuable consideration without previous notice of her father's fraudulent intent. So, before discussing the question whether the badges of fraud were of sufficient probative value to authorize or require the conclusion that Leonardo acted fraudulently, we stop to consider the question which arises under the proviso: whether the sum of $10.00, admittedly the entire consideration said to have been paid for a property worth $4,000, is to be regarded as a valuable consideration within the meaning of that term in the Code provision concerning fraudulent conveyances. If not, the matter of previous notice to the daughter is immaterial.

In this context the words "valuable consideration" have been held to mean the fair equivalent of the property conveyed, "for equity requires that such a gift, which defeats others, should be made on as high and good consideration as the things which are thereby defeated are." Twyne's Case, supra. The Court of Appeals of Kentucky held in Carter v. Richardson, 1901, 60 S.W. 397, that a consideration amounting to about half the value of the property fraudulently conveyed was not "valuable" within the meaning of the statute.

In Ten Eyck v. Witbeck, 1892, 135 N.Y. 40, 31 N.E. 994, 31 Am.St.Rep.

809, it was held that the conveyance of a farm worth $20,000 in consideration of $10.00 cash in hand paid and the grantee's undertaking to pay the net income therefrom to the grantor during his life and a part of it to the grantor's wife after his death, was not for a valuable consideration within the meaning of the recording act. The court said the term is one borrowed from the language of courts of equity and should be interpreted as it is understood in equity when used in statutes on trusts, powers, conveyances and frauds. See also Farmers' & Merchants' Bank v. Blue, 1930, 233 Ky. 583, 26 S.W.2d 493.

We hold that the sum of $10.00 allegedly paid to Leonardo by his daughter was not only wholly inadequate but was not a valuable consideration as that term is used in equity and in § 12–401. It follows that the proviso in that section does not protect the daughter's title from Mrs. Leonardo's inchoate right of dower.

Whether Leonardo had a fraudulent intent was a question of fact, made so by the express provision of the statute. The judgment in his favor on that issue recites that it "was based not so much on the evidence as on the failure of the plaintiff's evidence." The trial judge clearly erred as to both bases upon which he absolved Leonardo of a fraudulent intent and consequently denied dower to the wife. There was no credible evidence of good faith on the husband's part— indeed, one factual finding indicated the contrary [3]—to afford support to the decree. And, instead of a failure of proof that the conveyance was fraudulent, there was undisputed evidence of three indicia of fraud which, it has been shown, Leonardo did not try to rebut.

The court's finding or conclusion "That the evidence was insufficient to establish that the plaintiff had any interest in the Columbia Road property" is therefore not supported by the record but is contradicted thereby. The conclusion overlooks the legal effect of the several undisputed badges of fraud that Leonardo did not explain or justify, as we have said. His failure to carry the burden of doing so, which unquestionably was upon him, compels the conclusion from the badges that the conveyance was fraudulently conceived and executed. Usually the only method of determining actual intent is by a consideration of the circumstances surrounding the transaction. In Crowder v. Crowder, 1919, 125 Va. 80, 99 S.E. 746, 748, the Supreme Court of Appeals of Virginia said:

> "While fraud must be clearly proved by him who alleges it, it is not necessary that it should be expressly shown. It is rare that it can be. The participants are not apt to discuss it, but actions speak louder than words, and the transaction itself often furnishes proof of the fraud that is entirely satisfactory. * * *"

So it is here. The inference of fraud which arises from the undisputed, unexplained facts established by this record was of sufficient probative value to support, and indeed to require, an adjudication that the conveyance was fraudulent as to Mrs. Leonardo. Farrell v. Paulus, 1944, 309 Mich. 441, 15 N.W.2d 700; Humbird v. Arnet, 1935, 99 Mont. 499, 44 P.2d 756.

When the case is returned to the District Court, the judgment appealed from should be set aside, and it should be adjudged that Rebecca Auteri's title to the real estate in question is subject to Mrs. Leonardo's inchoate right of dower.[4]

Reversed and remanded.

---

3. The finding that the conveyance was for a consideration of $10.00.

4. An Act of August 31, 1957, Pub.L. No. 85–244, 71 Stat. 560, abolished the right of dower in the District of Columbia, "* * * except that with respect to parties who intermarried prior to the effective date of this Act, the wife shall retain her dower rights in all real estate whereof the husband, prior to the effective date of this Act, was seized of an estate of inheritance at any time during the marriage. * * *" Thus, by express provision of the new statute, it is inapplicable here.